No. 102,938

Daniel L. Hemphill, *Appellant*, v. Jay F. Shore, Trustee of the Shore Family Trust, *Appellee*.

(289 P.3d 1173)

Opinion filed December 7, 2012.

*Aaron L. Kite*, of Rebein Bangerter PA, of Dodge City, argued the cause and was on the briefs for appellant.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Shannon M. Braun*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Plaintiff Daniel L. Hemphill appeals the district court's statute of limitations dismissal of his lawsuit against his uncle, defendant Jay F. Shore, as trustee of the Shore Family Trust. The Court of Appeals affirmed in *Hemphill v. Shore*, 44 Kan. App. 2d 595, 239 P.3d 885 (2010), and we accepted this appeal on Hemphill's petition for review.

We hold that three of four of Hemphill's causes of action are time barred, but his claim based on constructive fraud survives. The controlling trust instrument established a confidential relationship between plaintiff as beneficiary and defendant as trustee, and it limited defendant's discretion to pay out income and distribute proceeds from the sale of principal to provide only for defendant's health, education, support, or maintenance. Plaintiff has alleged that defendant did both for merely personal purposes and that plaintiff was unaware of the trust and defendant's actions until within 2 years before filing suit. We thus affirm in part and reverse in part the rulings of the district court judge and the Court of Appeals panel and remand to the district court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1984, grantors Lee Shore and Linna S. Shore created the Shore Family Trust. The principal of the irrevocable trust consisted of farmland in Stanton County. The trust instrument designated as "principal beneficiaries" the grantors' children, defendant Jay and plaintiff's mother, Susan; their spouses; and "any children subse-

quently born to Jay and Susan." Jay and Susan were named trustees; on the death of one, the other was designated to continue as sole trustee.

Other potentially pertinent provisions of the trust instrument read:

"ARTICLE IV
"DISPOSITIVE PROVISIONS

"The Trustee shall hold the trust property for the primary benefit of the principal beneficiaries . . . .

. . . .

"B. General Dispositive Provisions. . . .

"1. Lifetime Disposition of The Shore Family Trust. During the lifetimes of Jay F. Shore and Susan L. Shore, the Trustee, in said Trustee's sole discretion, shall pay the income of The Shore Family Trust to Jay F. Shore and Susan L. Shore and/or their issue, in such amounts as the Trustee may deem necessary to provide for said income beneficiaries' health, education, support or maintenance. . . .

"In the event the income of The Shore Family Trust is insufficient, in the Trustee's sole discretion, to provide for the health, education, support or maintenance of Jay F. Shore and Susan L. Shore, the Trustee may invade the principal of The Shore Family Trust to the extent said Trustee deems necessary to provide for the benefit of Jay F. Shore and Susan L. Shore.

"2. Termination. If not earlier terminated by distribution of all assets under the foregoing provisions, The Shore Family Trust shall terminate upon the death of the survivor of Jay F. Shore or Susan L. Shore. On termination, the Trustee shall distribute one-half (½) of the then remaining assets of The Shore Family Trust, including any undistributed income therefrom or any part thereof to the children of Jay F. Shore in equal shares, per stirpes; and one-half (1/2) of the then remaining assets of The Shore Family Trust, including any undistributed income therefrom or any part thereof to the children of Susan L. Shore, in equal shares, per stirpes . . . .

. . . .

"ARTILE VII
"TRUST ADMINISTRATION

. . . .

"G. Accounting by Trustee. The Trustee may render an accounting at any time to the beneficiaries of the trusts created herein, and the written approval of a beneficiary shall be final, binding and conclusive upon any person then or thereafter interested in the trust for that beneficiary.

. . . .

"I. Discretionary Termination. Notwithstanding any other provision of this instrument, if the Trustee, in said Trustee's sole and absolute discretion, determines

that the expense of continuing a trust created hereunder has become greater than the trust assets and the existing situation warrant, the Trustee may terminate such trust and distribute the trust property, including any undistributed income, to the persons then entitled to income, with one (1) share distributed to each beneficiary surviving, and the share of any predeceased named beneficiary shall be distributed to their issue, per stirpes.

. . . .

"K. Reports. The Trustee shall render periodic reports at least annually, to each beneficiary then eligible to receive the current income of the trust. Each report shall show all receipts, disbursements and distributions during the period covered, and the assets then held in the trust. The Trustee's records shall be open at all reasonable times to the inspection of the beneficiaries of any Trust and to their accredited representatives.

. . . .

"M. Trustee Guidelines. Without in any way limiting the discretion herein given to the Trustee, Grantor suggests that the primary purpose of The Shore Family Trust is to provide for the specified needs of Jay F. Shore and Susan L. Shore in equal shares; and provided their needs are satisfied to provide for the specified needs of the children of Jay F. Shore and Susan L. Shore; and provided their needs are satisfied, to provide for the specified needs of the issue of the children of Jay F. Shore and Susan L. Shore."

Susan died on January 20, 1992, leaving plaintiff Hemphill as her only child. According to plaintiff's response to the defense motion to dismiss in this case, plaintiff, who was age 7 or younger when his mother died, was unaware of the trust or its provisions until his grandmother's estate was probated in 2008. Neither he nor his natural guardian had ever received a report on the existence of the trust or the status of its assets.

Plaintiff filed this lawsuit on April 8, 2009, attaching a copy of the trust instrument to his petition.

In Plaintiff's second amended petition, which the district judge permitted to be filed at the same time he ruled on the motion to dismiss, plaintiff alleged that defendant sold the farmland that formed the principal of the trust and "distributed all or a substantial portion of the proceeds to himself, which proceeds were, upon information and belief, used by Defendant for his own personal purposes"; that "Defendant's actions were self-dealing and a violation of the Declaration of Trust, the intent of the Trust," his obligations under the Kansas Uniform Trust Code and applicable prior law, and "his various duties as a trustee of the Trust, including

the duty of loyalty and duty of good faith and fair dealing"; that the "principal and income of the trust were . . . knowingly converted by Defendant to his own personal use in violation of the express and implied terms of the trust and the intent of the trust settl[o]rs"; and that defendant

"was a fiduciary with respect to Plaintiff, and violated his fiduciary duty and duty of loyalty by converting the principal and income of the Trust to his own personal use immediately after the death of Plaintiff's mother. He also violated his duty as a fiduciary with respect to Plaintiff, breaching the duty of loyalty, duty of good faith and fair dealing, and other duties placed upon him by virtue of his fiduciary relationship with Plaintiff."

These and other allegations were set up to support plaintiff's four causes of action: breach of trust, breach of fiduciary duty, conversion, and constructive fraud. Plaintiff sought imposition of a constructive trust "on the property of the Trust for the benefit of the beneficiaries" and "such other and further relief in Plaintiff's favor as the Court deems just and equitable."

Defendant moved to dismiss the action, arguing that the applicable statutes of limitations and repose barred all of plaintiff's claims.

The district judge ruled in defendant's favor, holding that the trust was a "discretionary trust granting broad discretionary powers to the trustee to distribute . . . income and to invade princip[al]." His journal entry of dismissal continued:

"IT IS FURTHER BY THE COURT FOUND that based upon the Trust Agreement, that in the Trustee's sole discretion the Trustee had the right to invade princip[al] to the extent said Trustee deemed it necessary to provide for the benefit of Jay F. Shore and Susan L. Shore. The Trust document is full of discretionary language giving the Trustees the ability to invade princip[al] when they deem necessary in their sole discretion.

". . . The plaintiff has requested the inclusion of a claim for constructive trust and alleges generally that the actions of the Trustee were betrayal of trust but does not allege any specific acts of fraudulent conduct o[r] misuse or theft of any trust assets.

"THE COURT FURTHER FOUND that based on *Stark v. Mercantile Bank NA*, 29 Kan. App. 2[d] 717, 725, 33 P.3d 609 (2000), that not every nondisclosure by a trustee is necessarily fraudulent and the Court must evaluate the allegations of fraud set forth in the Petition. When evaluating the pleadings in the Amended Petition submitted by the Plaintiff relating to the allegations of constructive fraud,

the allegations are that Mr. Shore failed to act appropriately. The Shore Family Trust was a discretionary trust granting Defendant full and sole discretion with regard to his actions and conduct.

"IT IS FURTHER BY THE COURT FOUND that based on the facts as ple[d], both in the First Amended Petition and the Second Amended Petition, the statute of limitations is not tolled and Plaintiff's claims are barred by the statutes of limitations."

Plaintiff appealed unsuccessfully to the Court of Appeals.

The panel gave short shrift to plaintiff's conversion and breach of fiduciary duty causes of action. On the conversion claim, the panel stated that any conversion, *i.e.*, the sale of the farmland, took place in 1992 or 1993 or both and thus was barred by the 2-year statute of limitations period of K.S.A. 60-513(a)(2) or by the 10-year statute of repose under K.S.A. 60-513(b). The panel also cited the 10-year statute of repose on the breach of fiduciary duty claim. *Hemphill*, 44 Kan. App. 2d at 600-01.

Moreover, to the extent plaintiff attempted to rely on his minority at the time the conversion and breach of fiduciary duty claims arose, the panel held that the 1-year accommodation contained in K.S.A. 60-515(a) for persons who are minors when their causes of action accrue was limited by the 8-year statute of repose in the same subsection; the 8 years had run long before plaintiff filed suit. *Hemphill*, 44 Kan. App. at 601-02.

In rejecting plaintiff's breach of trust claim for failure to provide accountings and reports, the panel first ruled that the Kansas Uniform Trust Code, which did not become effective until January 1, 2003, did not apply. *Hemphill*, 44 Kan. App. 2d at 602. Under earlier governing law, the panel ruled, plaintiff's claim that defendant breached the trust was barred by the 5-year statute of limitations in K.S.A. 60-511(1), which covers causes of action arising out of written contracts or promises. In the Court of Appeals' view, any obligation to account or report ended with defendant's sale of the farmland in 1993 at the latest, and no cause of action for breach of the trust could be brought later than 1998. *Hemphill*, 44 Kan. App. 2d at 602-03.

The panel then turned to plaintiff's constructive fraud claim. It first recited the definition of such a claim from *Nelson v. Nelson*, 288 Kan. 570, 583, 205 P.3d 715 (2009):

" ' " '[A] breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty [n]or purpose of intent to deceive is necessary.' " [Citation omitted.] Two additional elements must also be proven in order to establish constructive fraud: (1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship. [Citation omitted.]' *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 26, 180 P.3d 571 (2008)."

The panel then noted the general rule that fraud must be pled with particularity. See K.S.A. 60-209(b). But it observed that this court had not determined whether this heightened pleading standard applied to constructive fraud, an issue on which there is a split of authority. *Hemphill*, 44 Kan. App. 2d at 603-04; see *Nelson*, 288 Kan. at 583-84. The panel ultimately was persuaded that constructive fraud claims should be subject to the heightened pleading standard, *Hemphill*, 44 Kan. App. 2d at 604-06, and it decided that plaintiff's allegations did not measure up:

"Hemphill's second amended petition alleges that '[s]hortly after Susan L. Shore's death, the Trust's remaining trustee, Defendant, sold the farm ground that previously comprised the principal of the Trust and distributed all or a substantial portion of the proceeds to himself, which proceeds were upon information and belief, used by Defendant for his own personal purposes.' This allegation does not identify the time, place, or content of the sale of the 'farm ground.' Moreover, the allegation does not assert anything was improper or fraudulent about the sale of the farm land or about the distribution of the proceeds from the sale of the farm land.

"As stated earlier, Hemphill filed suit in this matter on April 8, 2009. Even the latest period of the alleged wrongdoing—the selling of the farm land and the misappropriation of the proceeds from the sale of the farm land in 1993—occurred over 15 years before the filing of the suit. Hemphill has failed to either plead or present any facts which indicate when the alleged fraud was discovered. In addition, the petition fails to allege that the fraud was not and could not have been discovered earlier than 2 years preceding the commencement of suit on April 8, 2009." *Hemphill*, 44 Kan. App. 2d at 606-07.

After further analysis, the panel held that plaintiff's petition failed to state a claim upon which relief could be granted and affirmed the district judge's dismissal of this case. *Hemphill*, 44 Kan. App. 2d at 607-10.

## Discussion

When a motion to dismiss raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. K.S.A. 60-212(b)(6). Dismissal is justified only when the plaintiff's allegations clearly demonstrate that plaintiff does not have a claim. *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman,* 267 Kan. 245, 250, 978 P.2d 922 (1999). When a district court has granted a motion to dismiss, an appellate court must accept as true the facts alleged by plaintiff, along with any inferences that can reasonably be drawn from the facts. The appellate court then must decide whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed. *Rector v. Tatham,* 287 Kan. 230, 232, 195 P.3d 364 (2008).

Although defendant attached an affidavit and trust tax return to his motion to dismiss, it is evident from the district court judge's journal entry of dismissal that the judge did not consider the affidavit or tax return in his ruling. We therefore continue to treat the motion as one to dismiss rather than one for summary judgment. See *Seaboard Corporation v. Marsh Inc.,* 295 Kan. 384, 392-93, 284 P.3d 314, 319-21 (2012).

Unlike the materials attached to the motion to dismiss, the trust instrument itself was considered by the district court and the Court of Appeals and may be considered by this court; it qualifies as integral to the plaintiff's second amended petition, to which it was attached and in which it was referenced. See K.S.A. 60-209(h). We treat the trust instrument like any other written instrument on appeal, which means the district judge's legal interpretation of its language is subject to our de novo review. See *Miller v. Kansas Dept. of S.R.S.,* 275 Kan. 349, 353, 64 P.3d 395 (2003).

By the time the parties reached oral argument before this court, they were in agreement that plaintiff's breach of trust, breach of fiduciary duty, and conversion causes of action were time barred. They further agreed that, if plaintiff's constructive fraud claim was adequately pled, including the timing of plaintiff's discovery of de-

fendant's alleged betrayal of the confidential relationship between the parties, this suit could survive for pursuit of judgment on that one cause of action.

These agreements considerably simplify the task before us. In their wake we discern a series of three questions that must be answered to resolve this appeal: (1) Did the district court judge correctly interpret the language of the trust instrument to invest defendant with totally unfettered discretion to pay out income and invade and distribute the proceeds from sale of the trust principal for his personal benefit? (2) Regardless of the statute of limitations, did plaintiff allege facts to support the elements of constructive fraud sufficient to meet the applicable pleading standard? and (3) Once defendant moved to dismiss, arguing that his affirmative defense of the statutes of limitations and repose barred the plaintiff's claims as a matter of law, did plaintiff respond with adequate allegations that, if proved, would make the discovery rule of K.S.A. 60-513(a)(3) applicable and the 10-year statute of repose in K.S.A. 60-513(b) inapplicable?

We analyze and answer each of these three questions in the sections below.

*Interpretation of Trust Instrument*

The first question focuses on the trust instrument language. Our fundamental goal in interpreting such an instrument is implementation of the grantors' intent. If the trust language is plain and unambiguous, then the grantors' intent can be ascertained from language used. If the trust language is ambiguous, then a construing court must place itself as nearly as possible in the position of the grantors and consider all of the language in the entire instrument to ascertain the intent. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 437, 109 P.3d 1146 (2005).

Kansas recognizes both discretionary trusts and support trusts. A discretionary trust is established when the grantor gives the trustee discretion to make distributions from the trust, and the beneficiary has no legal authority to force the trustee to make a distribution to the beneficiary from either the income or principal. *Miller*, 275 Kan. at 354. A support trust, on the other hand, is

established when the trustee "is required to inquire into the basic support needs of the beneficiary and provide for those needs," and the beneficiary has the legal right to demand payment for support. *Miller*, 275 Kan. at 354.

Both the district court judge and the Court of Appeals panel treated the language of the trust instrument as though it unambiguously established a purely discretionary trust. The instrument does include several references to decisions to be made in "the sole discretion" or in "the discretion" of the trustee. At least one provision, that governing discretionary determination of the trust, places the determination of the continuing economic usefulness of the trust in the trustee's "sole and absolute discretion." Still other provisions reference decisions to be made "as the Trustee determines."

However, when we focus on the provision most critical to this appeal, the one on which plaintiff's constructive fraud claim hinges, Article IV, Section B.1, a more limited picture of the trustee's authority emerges. Under the first paragraph of that subsection, the trustee is permitted, in the trustee's sole discretion to pay income generated by trust assets *only* in those amounts the trustee "deems necessary" to provide for Jay's, Susan's and/or their children's *"health, education, support or maintenance."* (Emphasis added.) Under the second paragraph of that subsection, the trustee may determine whether the income of the trust is sufficient to provide for *"the health, education, support or maintenance"* (emphasis added) of Jay and Susan in the trustee's "sole discretion"; *only* if such an insufficiency exists—that is, one obstructing provision for the *health, education, support or maintenance*—may the trustee invade principal as the "Trustee deems necessary to provide for the benefit of" Jay and Susan.

The Shore Family Trust's limitation of trustee payment of income and invasion or distribution of proceeds from the sale of the principal farmland to those situations when it is necessary to provide for the health, education, support, or maintenance of Jay and Susan is not mere window dressing. The list of those four purposes is a term of art under the Internal Revenue Code, known collectively as "ascertainable standards" and whose inclusion affects cal-

culation of estate and gift taxes. See 26 U.S.C. § 2041(b)(1)(A) (2006) (gross taxable estate of deceased person does not include trust assets decedent could have consumed, invaded, appropriated for own benefit during lifetime, if power of appointment limited by ascertainable standards related to person's "health, education, support, or maintenance").

"The underlying concept in the definition of an ascertainable standard rests upon the premise that a person who holds the power to render decisions pursuant to an ascertainable standard, such as a discretion given to a trustee to make distributions out of income or accumulations, really does not have a power, but rather a duty. It is basically a question of accountability . . . . Words such as support, education, maintenance, care, necessity, illness, and accident are generally regarded as providing ascertainable standards; while words such as happiness, pleasure, desire, benefit, best interest, and well-being are generally not regarded as being sufficiently definite so as to provide ascertainable standards.

" '[A different result is not required] by reason of the fact that the trustees' power was discretionary, for the exercise of that power was limited by an external standard fixed by the agreement itself. And although it may be true that a court of equity ordinarily will not substitute its discretion for that of the trustee, nevertheless, even where the power is granted in terms of the "sole" or "uncontrolled" discretion of the trustee, it will review his action to determine whether in light of the standards fixed by the trust instrument, such discretion has been honestly exercised.' [Citations omitted.]" *Estate of Fred A. Cutter*, 62 T.C. 351, 356 (Tax Ct. 1974).

See *e.g.*, *Markham v. Fay*, 74 F.3d 1347, 1358 (1st Cir. 1996) (citing cases interpreting trustee powers for federal estate tax; ascertainable standards limit trustee discretion when principal, income to be distributed for specific purpose such as education, support); *Outwin v. Commissioner of Internal Revenue*, 76 T.C. 153, 161-62, 168-69 (Tax Ct. 1981) (lack of ascertainable standards in trusts means no surrender of dominion and control over trust assets); *Falk v. Commissioner of Internal Revenue*, T.C. Memo 1965-22, No. 139-63, 1965 WL 622 (Tax Ct. 1965) (trust instrument limiting trustees' power to distribute income, principal to when necessary for wife's "adequate care, comfort, support and maintenance," considering other funds available to her, provided ascertainable standards); see also *Hyde v. United States*, 950 F. Supp. 418, 419 (D.N.H. 1996) (citing 26 U.S.C. § 2041[b][1][A] [1994]; Treas. Reg. § 20.2041-1[c], -3[c][2] [1995]) (defining ascertainable stan-

dards needed to avoid estate tax); *Estate of Schlotterer v. United States*, 421 F. Supp. 85, 90 (W.D. Penn. 1976) ("no question that if the power to consume either income or corpus is limited by . . . provisions for the life tenant's health, education, support or maintenance in her usual comfortable circumstances, these are ascertainable standards"); *National Bank of Com. of San Antonio v. United States*, 369 F. Supp. 990, 992 (W.D. Tex. 1973) (trustee's limitation to spending for " 'benefit' " of wife " 'so loose' " that trustee effectively " 'uncontrolled' "); *Loyd v. United States*, 319 F. Supp. 237, 239 (W.D. Tenn. 1970) (direction to trustee to encroach on corpus for pleasure of niece inadequate as reasonably ascertainable standard); *Carlson v. Sweeney, Dabagia, Donoghue*, 895 N.E.2d 1191, 1193-94 (Ind. 2008) (ascertainable standards for distribution of trust principal needed to avoid estate tax liability). The inclusion of ascertainable standards in the trust instrument in this case means that the trust was not purely discretionary. This means that Jay, as sole trustee after Susan's death, was not free to pay out income or invade the principal for any amorphous "benefit" to himself. The district court judge and the Court of Appeals erred on this point.

In addition to what we know generally about trust instrument scrivener and grantor motivations to include ascertainable standards to limit a trustee's discretion for tax purposes, other language in the trust instrument at issue here supports our assessment of the grantors' intent. Article VII, Section M is labeled "Trustee Guidelines," and it expressly states that the primary purpose of the trust "is to provide for the specified needs" of Jay and Susan "in equal shares." If this primary purpose is accomplished, then the purpose shifts to provide for the "specified needs" of their children. The specified needs in this section are intended to refer back to those four listed in Article IV, Section B.1. The grantors expressly dedicated both income and principal to funding these needs, not to grant a general benefit to Jay. Again, the district judge and the Court of Appeals panel erred to the extent they interpreted or construed the trust instrument otherwise.

### Adequacy of Pleading of Constructive Fraud

The second question we must address is whether plaintiff alleged facts to support the elements of constructive fraud sufficient to meet the applicable pleading standard.

Our Court of Appeals panel was correct that this court has not previously decided whether a constructive fraud cause of action is subject to K.S.A. 60-209(b)'s heightened pleading standard. See *Nelson*, 288 Kan. at 583-84; compare K.S.A. 60-209(b) (circumstances constituting fraud "shall be stated with particularity") and K.S.A. 60-208(a)(1) (pleading shall contain "short and plain statement of the claim showing that the pleader is entitled to relief"). But we disagree with the panel on whether the question requires an answer in this case. Putting aside for the moment any potential time bar, we hold that plaintiff's pleading of his constructive fraud claim in his second amended petition, with its attachment of the integral trust instrument, met either standard.

Constructive fraud does not require proof of actual dishonesty or a purpose or intent to deceive. It requires only that a confidential relationship existed between the parties and that defendant's behavior constituted a betrayal of this confidence or a breach of duty imposed upon him by his relationship with plaintiff. The law calls such a betrayal or breach "fraud" because of its tendency to deceive or to violate a confidence, regardless of moral guilt. See *Schuck*, 286 Kan. at 26.

The trust instrument before us demonstrates the undeniable existence of a confidential relationship between, on the one hand, plaintiff as a beneficiary and, on the other hand, defendant as sole trustee during the period between Susan's death in 1992 and what defendant represents was the termination of the trust in 1995. As we have discussed in the preceding section, the trustee's authority to pay out trust income or invade and distribute proceeds from the trust principal was not limitless. In paragraphs 11, 14, and 18 of the second amended petition, plaintiff repeatedly alleged that defendant appropriated the assets of the trust for his own personal purposes, which the ascertainable standards in the trust instrument did not allow. If true—and on motion to dismiss we are required

to assume such truth—these allegations are sufficient to constitute a betrayal of the parties' confidential relationship or a breach of a duty the relationship imposed. Such a betrayal or breach is worthy of its legal classification as a constructive fraud, regardless of whether defendant bears any moral guilt.

*Application of Statutes of Limitations and Repose*

The third question is whether plaintiff responded adequately to defendant's assertion in his motion to dismiss of the statutes of limitations and repose as affirmative defenses. Plaintiff argues correctly that a defendant has the burden to raise such affirmative defenses. See *Meek v. Ames*, 175 Kan. 564, 567-68, 266 P.2d 270 (1954). But, once that happened through defendant's motion to dismiss, plaintiff bore the burden to allege facts supporting his argument that his claim was not time barred. See *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992).

Here, plaintiff filed a memorandum in opposition to the defense motion to dismiss, as well as a motion to amend his first amended petition, which was granted. We therefore rely on plaintiff's allegations in both the memorandum in opposition, see *Meek*, 175 Kan. at 567 (plaintiff's allegations in reply to be considered in whether defense asserted in answer, motion rebutted), and the second amended petition to determine whether plaintiff asserted facts, if assumed to be true, that would make the discovery rule of K.S.A. 60-513(a)(3) applicable and the 10-year statute of repose in K.S.A. 60-513(b) inapplicable.

Plaintiff correctly relies upon our decision in *Jennings v. Jennings*, 211 Kan. 515, 507 P.2d 241 (1973), for the governing legal framework on this set of issues. In that case, the plaintiff beneficiaries sued the person to whom they believed a trustee had transferred trust assets in violation of the grantors' intent. The defendant argued that the applicable statutes of limitations and repose barred the action.

This court first addressed whether the cause of action sounded in fraud and concluded that "a trustee who breaches or repudiates a trust agreement commits an act which necessarily encompasses fraud." *Jennings*, 211 Kan. at 524. It then examined the record to

determine whether the plaintiffs discovered or should have discovered the fraudulent acts of the trustee more than 2 years before filing suit. It determined that the record supported the plaintiffs' position that they had no "knowledge or information which would arouse suspicion or alert them to wrongdoing on the part of the trustee" during his lifetime. *Jennings*, 211 Kan. at 523. The plaintiffs filed suit 4 months after the trustee's death, which fell well within 2 years after their discovery of the fraud, as required under what is now K.S.A. 60-513(a)(3). *Jennings*, 211 Kan. at 520, 523-25.

In addition, the *Jennings* court rejected the defense assertion that the 10-year statute of repose now in K.S.A. 60-513(b) was applicable. It stated:

"The provision for the ten-year limitation period does not mention fraud or the discovery of fraud, but refers to those cases where the fact of injury may become ascertainable sometime following the act causing the injury. In an action based upon fraud, its discovery is simultaneous with the discovery of the injury resulting therefrom. In order to harmonize the statute and give effect to each of its provisions we must conclude the legislature did not intend that an action based on fraud was subject to the ten-year limitation." *Jennings*, 211 Kan. at 527.

In this case, plaintiff's second amended petition does not speak directly to the issue of when defendant's alleged constructive fraud was discovered. However, it does state that plaintiff was born sometime between the execution of the trust instrument in December 1984 and the death of plaintiff's mother in January 1992. At most, this means plaintiff was 7 years old when his mother died. Plaintiff's memorandum in opposition to the defense motion to dismiss does speak directly to the timing of discovery, stating clearly that plaintiff "did not even discover the existence of the Trust until his grandmother's estate was probated in 2008."

Assuming as we must the truth of this statement, plaintiff did not discover the alleged fraud or learn facts that would lead a reasonably prudent person to investigate until within 2 years before the filing of this lawsuit, as required by K.S.A. 60-513(a)(3). See *Robinson v. Shah*, 23 Kan. App. 2d 812, 824-25, 936 P.2d 784 (1997) (citing *Dalton v. Lawrence National Bank*, 169 Kan. 401, Syl. ¶ 6, 219 P.2d 719 [1950]). And the 10-year statute of repose

in K.S.A. 60-513(b) does not apply to actions for fraud. See *Jennings*, 211 Kan. at 527. Hence, plaintiff's constructive fraud cause of action was timely filed.

## CONCLUSION

Plaintiff Hemphill adequately pled a timely constructive fraud claim. He attached the integral trust instrument to his pleadings, which demonstrated the existence of a confidential relationship between himself and defendant. We interpret that instrument as a matter of law to have placed certain limitations on the nature of the uses to which defendant could put trust income and principal; and plaintiff's pleadings alleged that defendant deviated from those purposes when he paid out trust income and distributed proceeds from the sale of the trust principal farmland. These allegations satisfied either the usual pleading standard or heightened pleading standard applicable to fraud. In addition, plaintiff's response to defendant's assertion of the affirmative defenses of the statutes of limitations and repose was an allegation we must, at this stage of the proceedings, take as true: The plaintiff did not discover the existence of the trust nor any constructive fraud arising out of it until 2008, less than 2 years before filing suit.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of dismissal by the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.