No. 120,054

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENISE ANN ROENNE; JEANETTE MARIE MILLER; MARK BENTON MILLER;
and JUSTIN MILLER,
*Appellants*,

v.

LAWRENCE BRADLEY MILLER and AMY STARR MILLER,
*Appellees*.

SYLLABUS BY THE COURT

1.

Two types of trusts are recognized in Kansas law: support trusts and discretionary trusts. A support trust is established when the trustee has to provide for the basic support needs of the beneficiary and the beneficiary has a legal right to demand payment for support. A discretionary trust is established when the settlor gives the trustee discretion to make distributions from the trust and the beneficiaries have no legal authority to force the trustee to make a distribution from either the income or principal.

2.

When the trust language provides that the trustee has "absolute discretion" at any time to make or not make distributions and may exclude any of the beneficiaries from receiving distributions, it is a discretionary trust. No one beneficiary has a right to any distribution.

1

3.

In reviewing discretionary trusts, a court may only interfere in cases of an abuse of discretion by a trustee or where the trustee acted in bad faith or the trustee's conduct is so arbitrary and unreasonable that it amounts to practically the same thing.

4.

A trustee who reasonably and in good faith relied on the express provisions of a trust is not liable to a beneficiary for a breach of trust to the extent the breach resulted from such reliance.

5.

Three fiduciary duties are imposed by law on all trustees: loyalty, impartiality, and prudence.

6.

The duty of loyalty requires a trustee to administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries. K.S.A. 2019 Supp. 58a-802(a).

7.

The duty of impartiality is imposed by law if a trust has two or more beneficiaries. The trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests. K.S.A. 58a-803.

8.

The duty of prudent administration requires a trustee to administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution. K.S.A. 58a-804.

9.

A trustee must act in good faith and in the interests of the beneficiaries. While a trust can eliminate strict prohibitions, such as that against self-dealing, it cannot eliminate the duty of loyalty. That limit preserves the fundamental fiduciary character of trust relationships recognized by law.

10.

It is contrary to sound policy, and a contradiction in terms, to permit the settlor to relieve a trustee of all accountability. Even under the broadest grant of fiduciary discretion, a trustee must act honestly and in a state of mind contemplated by the settlor. What this means is that courts will intervene to prevent trustees from acting in bad faith, or without regard to the terms and purposes of the trust or the interests of its beneficiaries.

Appeal from Rooks District Court; BLAKE A. BITTEL, judge. Opinion filed October 2, 2020. Reversed and remanded with directions.

*Craig L. Uhrich*, of Upshaw, Uhrich, Taylor & Dykema PLLC, of Oakley, for appellants.

*Todd D. Powell*, of Glassman Bird Powell, LLP, of Hays, for appellees.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

HILL, J.: At times a court ruling must be reversed because of the precedent it creates. This is such a case. By law, a trustee owes the beneficiaries of a trust three duties: loyalty, impartiality, and prudence. The trustee here, Brad Miller, violated all three of these fiduciary duties when he took all of the trust assets for himself and his wife. The district court erred when it ruled that because the testamentary trust instrument gave Miller discretion to act, he could ignore the interests of the other beneficiaries and clean out the trust for his own use. A trustee cannot ignore fiduciary responsibilities and act as

3

if there was an outright gift of the trust assets just because the testator gave the trustee unlimited authority to decide on the assets. Said another way, a trustee cannot act as if there is no trust at all. We reverse and remand for further proceedings.

*Mother creates a testamentary trust.*

Sonya Marie Miller died in 1995. She was survived by five children: Denise Roenne; Jeanette Miller; Mark Miller; Justin Miller; and Brad Miller. At the time of her death, Sonya owned:

- Royalty interests in several oil leases in Rooks County;
- farmland in Osborne County and Russell County;
- a house in Natoma, Kansas;
- cattle, farm equipment, and other personal property.

In her will, Sonya bequeathed an undivided one-half interest in her farm real estate to Brad in fee simple. She bequeathed the other undivided one-half interest in her farm real estate to Mark for his lifetime and upon his death to his children. She directed that if Mark died without children, the remainder interest went to Brad. She bequeathed all of her livestock and farm machinery to Brad and Mark equally. She also left certain personal property to Brad and Mark.

Mark later assigned his one-half interest in the farm operation to Brad. Brad erased the other children's interest in a quiet title action. In her will, Sonya specifically provided that her other children were not to own her farm property:

"Under no circumstances is any interest in my farm real estate to come into the ownership or control, either directly or indirectly, of my daughter, Jeanette Billingsley, my daughter, Denise Conner, nor my son, Justin Miller, from any source whatsoever and

4

in the event that ever occurs, said interest shall immediately be divested and shall go to my son, Lawrence Bradley Miller."

Sonya directed that the remainder of her estate went into a trust to be managed by Brad as trustee for the benefit of "all of my children":  Jeanette, Denise, Justin, Brad, and Mark. Upon the death of all the beneficiaries, the remaining amount held in trust was to be distributed per capita to each grandchild. She named Mark to replace Brad as trustee in the event of Brad's death, incapacity, or disqualification as trustee.

The trust provided: "At no time under any circumstances are any of the beneficiaries to become trustees." The trust consisted solely of the oil royalty interests. The district court in Osborne County appointed Brad trustee of the trust, and Brad swore an oath to perform his duties as trustee.

The testamentary trust stated that the trustee had "uncontrolled" or "exclusive" discretion over the trust:

> "The net income may be paid to, or applied for the benefit of, any or all of the beneficiaries from time to time, in such amount or amounts as the said trustee, in his uncontrolled discretion may determine; any net income in any year which is not paid to, or applied for the benefit of, any of said beneficiaries, shall be added to the principal at the end of the year; and in addition, the principal may be paid to, or applied for the benefit of, any of the said beneficiaries, from time to time, in such amount or amounts as the said trustee in his uncontrolled discretion may determine.
>
> . . . .
>
> "The said trustee, in his uncontrolled discretion, may at any time he deems it advisable and for the best interests of the said beneficiaries, distribute such income and principal to any of the beneficiaries designated herein at any time and in any amount. I want it made clear however that it is strictly within the discretion of the said trustee as to what income is paid to each of the beneficiaries entitled thereto as well as what principal may be provided to any of the beneficiaries entitled thereto.

5

. . . .

" . . . At all times, the entitlement of the beneficiaries to the income or principal shall be in the sole and exclusive discretion of the trustee named herein and his successors and at all times, his decision concerning distribution shall be final both as to the amount to be received by each of the said beneficiaries, as well as which beneficiary shall receive. At no time shall any of the beneficiaries named have the absolute right or entitlement to any of the income or principal or either of them, except for the right of the grandchildren of the said decedent for distribution upon liquidation of the said trust."

The trust authorized the trustee to use the income and principal of the trust to:

- pay the decedent's funeral and medical expenses;
- pay the administration expenses of the decedent's estate;
- pay the decedent's taxes;
- purchase and retain as investments any securities or other property, real or personal, belonging to the decedent's estate;
- make loans or advances to the decedent's executor or administrator;
- invest in stocks or in other personal or real property;
- make loans with adequate interest and security;
- sell, exchange, lease, and make contracts concerning real or personal property;
- hold bonds, shares, or other securities; to deposit cash in a bank account;
- improve or develop real estate;
- employ investment counsel, custodians of trust property, brokers, agents and attorneys;
- pay as income the whole of the interest, dividends, rent, or similar receipts from the property;
- carry on a crop and livestock program; operate a farm;
- execute oil and gas leases and other mineral leases; execute conveyances of the minerals; execute assignments of royalties; in his "uncontrolled discretion to convey or dispose of any mineral interest purchased."

6

The trust then stated that the trustee was to *only* act in a fiduciary capacity:

> "All powers given to the trustee or trustees by this instrument are exercisable by the trustees only in a fiduciary capacity. No power given to the trustee or trustees hereunder shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of the principal of the income therefrom for less than adequate consideration in money or money's worth."

The trust provided that the trustee "shall each year render an account of his administration of the trust funds hereunder that the same shall be available for inspection by any of the beneficiaries at any reasonable time."

Finally, the trust provided: "Each trustee and each successor trustee shall be liable only for failure to exercise reasonable care, prudence and due diligence in the discharge of his duties hereunder, but not for errors of judgment made in good faith."

*Over the years, Brad used the trust income for his own purposes and then transferred all the assets to himself.*

The record on appeal discloses a clear pattern of conduct by Brad. He treated this trust as his own property with no regard or consideration to the other beneficiaries. Because Sonya's farm operation was heavily indebted at the time of her death, the Natoma house was sold to pay down the debt. The Russell County land was foreclosed on. Amy, Brad's wife, bought parts of that land at its foreclosure auction. The title was in her name only until about a year later when she added Brad's name. The estate closed in 1997.

The only mortgage on record encumbering the oil interests was an $18,000 mortgage on one of the leases through Sunflower Bank, which Brad paid. As trustee, Brad distributed the income generated from the trust's oil leases to himself personally

from 1996 through 2015. He never set up a bank account for the trust. Instead, Brad deposited the oil income directly into his personal checking account which he jointly owned with Amy. Brad testified the gross production of the oil leases during the life of the trust was about $1,300,000.

Brad testified that he used the oil income to pay down the large debts on Sonya's farm real estate, which was not part of the trust. He acknowledged that this land was personally owned by him and Amy and he had used the oil income to pay for farm expenses in general, and not just debt. Amy acknowledged the oil income benefited her because it was being used to reduce the debt on the land in her name.

Part of Brad and Amy's farming operation consisted of two sections of Russell County land and Osborne County land from Sonya's estate. Brad admitted that his use of the oil money did not benefit the trust. But unless he could use the oil income to service the debt on the farm real estate and pay the farm expenses, he would not have taken on the responsibility of executor and trustee. He testified that he promised his mother that he "would keep the farm intact whatever way I could." He believed the trust gave him the authority to distribute all the wealth and worth of the trust to himself only and to pay the other beneficiaries nothing. He testified he was "investing" the oil money in his land.

In 2013 and 2014, as trustee, Brad conveyed the mineral rights from the trust to himself personally as a beneficiary, effectively emptying the trust of assets.

*The other beneficiaries sue and lose.*

The other beneficiaries sued Brad and Amy in December 2015. They alleged that Brad negligently and fraudulently breached his fiduciary duties by converting for his own use the income from the trust, conveying the mineral interests to himself, and failing to provide periodic accountings of trust activity to the other beneficiaries. They alleged

8

Amy acted as a de facto cotrustee because she disbursed money, wrote checks, and acted as a bookkeeper.

It was a clear win for Brad and Amy. Basically, the court condoned Brad's actions because the trust instrument gave him discretion to act.

> "Here the provisions of the trust are clear and unambiguous. They give the absolute discretion to the trustee to use principal of the trust. When reading the language of the Will and Trust as a whole, the intention of Sonya Miller was unquestionably that Brad have as much power as possible to use principal for the benefit of any beneficiary. This is true even with regard to the amount. There are no limitations. Sonya Miller reiterated and emphasized the power and discretion to Brad where she wrote in the trust 'I want it made clear however that it is strictly within the discretion of the said trustee as to what income is paid.'"

The court viewed the will and trust together, thus promoting to Brad's benefit some unstated purpose, despite the law of trusts to the contrary:

> "When reviewing the details . . . of the will and trust together it is clear that Sonya Miller knew exactly what she was doing. For example in the will, Brad was left his portion of the real [e]state outright but for whatever reason Ms. Miller was very careful to leave Mark's portion only as a life estate and furthermore provided that to the extent Mark didn't have children all the real estate would end up with Brad. She was also very specific that none of the other children would have any type of interest or ownership in the real estate using the words 'under no circumstances.'
> "Because it is abundantly clear she knew what she was doing, had she wanted to provide any limitations whatsoever with regard [to] trust income, including what it was used for and who it was paid to she certainly would have done that. Under these circumstances the court is not going to interfere with Sonya Miller's intentions at the time the Trust was created."

9

With no analysis of the law of trusts, the court found no fiduciary violations by Brad:

> "It should also be added that the court does not believe Brad violated the fiduciary duty owed as a trustee. He not only testified that he relied upon the terms of the trust, but also sought out the advice of others. He testified that an attorney told him that the oil income can be used to service debt. He also testified that as early as 1999 accountants and bankers were advising him to assign mineral interests. He also testified that bankers relied upon the terms of the trust in their business dealings with him and it was also their understanding that the income could be dealt with as it had been."

With total victory awarded to Brad, the court did not address any defenses Brad had raised:

> "Because the court does not find any breach of fiduciary duty or fraud on the part of Brad Miller, it is unnecessary to discuss the Defendants' statute of limitations defense."

*Issues on appeal*

The beneficiaries contend that the district court erred by ruling that the trust language granting the trustee "uncontrolled discretion" relieved Brad of his fiduciary duties as a trustee. They contend Brad violated his fiduciary duties of impartiality, loyalty, prudence, and the prudent investor rule, as well as the express terms of the trust by disbursing all of the trust assets to himself and his wife, Amy, without regard for the other beneficiaries. Brad and Amy spent the trust income on their own farm; the farm was not trust property. In the beneficiaries' view, that was self-dealing in violation of the Kansas Uniform Trust Code. They contend Amy is also liable for conversion and both are liable for fraud by silence. They contend Brad acted in bad faith and abused his discretion as trustee.

10

In their response, Brad and Amy contend that it does not matter why Brad distributed the trust income and principal to himself because the trust gave him that uncontrolled discretion. It did not require disbursements to the other beneficiaries, and it was not a support trust. Brad contends he acted in reasonable reliance on the provisions of the trust as allowed by the prudent investor rule—K.S.A. 58-24a01. Brad contends he did not violate his duty of loyalty under K.S.A. 2019 Supp. 58a-802 because transferring trust property to himself was authorized by the express provisions of the trust. And he contends that no consideration was necessary to make the transfer because he was also a beneficiary. They contend that Amy cannot be liable because Brad shared the proceeds with her as his spouse. Finally, they argue that the other beneficiaries' fraud by silence claim is new and should be disregarded and not properly before this court.

We exercise unlimited review over the district court's legal interpretation of this trust as well as any statutory interpretation. See *Hemphill v. Shore*, 295 Kan. 1110, Syl. ¶ 2, 289 P.3d 1173 (2012) (trusts); *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) (statutes).

While interpreting a trust instrument, we try to find out the settlor's intent. When the trust language is plain and unambiguous, then the settlor's intent can be learned from the language used. *Hemphill*, 295 Kan. at 1118. Here, that means we must determine what Sonya intended to do with her property when she created this trust. Neither side in this lawsuit argues that this testamentary trust is ambiguous.

Two types of trusts have been recognized by Kansas law: support trusts and discretionary trusts. A support trust is established when the trustee has to provide for the basic support needs of the beneficiary and the beneficiary has a legal right to demand payment for support. *Hemphill*, 295 Kan. at 1118-19. A discretionary trust is established when the settlor gives the trustee discretion to make distributions from the trust and the

11

beneficiaries have no legal authority to force the trustee to make a distribution from either the income or principal. 295 Kan. at 1118.

When the trust language provides that the trustee has "absolute discretion" at any time to make or not make distributions and may exclude any of the beneficiaries from receiving distributions, it is a discretionary trust. No one beneficiary has a right to any distribution. *Simpson v. Kansas Dept. of SRS*, 21 Kan. App. 2d 680, 684, 906 P.2d 174 (1995).

The Sonya Miller testamentary trust is a discretionary trust. The language she used leaves no doubt:

> "The said trustee, in his uncontrolled discretion, may at any time he deems it advisable and for the best interests of the said beneficiaries, distribute such income and principal to any of the beneficiaries designated herein at any time and in any amount. I want it made clear however that it is strictly within the discretion of the said trustee as to what income is paid to each of the beneficiaries entitled thereto as well as what principal may be provided to any of the beneficiaries entitled thereto.
>
> . . . .
>
> " . . . At all times, the entitlement of the beneficiaries to the income or principal shall be in the sole and exclusive discretion of the trustee named herein and his successors and at all times, his decision concerning distribution shall be final both as to the amount to be received by each of the said beneficiaries, as well as which beneficiary shall receive. At no time shall any of the beneficiaries named have the absolute right or entitlement to any of the income or principal or either of them."

This means Brad had great freedom to act in his capacity as trustee.

Discretionary trusts, such as this one, are somewhat shielded from court interference. A court may only interfere in cases of an abuse of discretion by a trustee, where the trustee acted in bad faith or the trustee's "conduct is so arbitrary and

12

unreasonable as to amount to practically the same thing." *Jennings v. Murdock*, 220 Kan. 182, Syl. ¶ 1, 553 P.2d 846 (1976); *Simpson*, 21 Kan. App. 2d at 688. A trustee who reasonably and in good faith relied on the express provisions of a trust is not liable to a beneficiary for a breach of trust to the extent the breach resulted from such reliance. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 436, 109 P.3d 1146 (2005).

Under this view, if the settlor's wishes direct that the trustee is to have total discretion, the courts will not thwart that intention by second-guessing the trustee's actions. Brad and Amy rely on this shield as their defense. According to Brad, Sonya granted him total discretion, and he chose to exercise his discretion as: "I will take it all for myself." The district court embraced this same view and ruled Brad's actions were proper.

The trouble with this "take the money and run" ruling is that it ignores some key principles of the law of trusts. These principles apply to all trusts. They are called the fiduciary duties of trustees: loyalty, impartiality, and prudence.

The Kansas Uniform Trust Code, found in K.S.A. 58a-101 et seq., imposes those duties on trustees. The duty of loyalty requires a trustee to "administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries." K.S.A. 2019 Supp. 58a-802(a). The statute then provides that a transaction involving trust property

> "entered into by the trustee for the trustee's own personal account or which is otherwise
> affected by a conflict between the trustee's fiduciary and personal interests is voidable by
> a beneficiary affected by the transaction unless:
>> (1) The transaction was authorized by the terms of the trust;
>> (2) the transaction was approved by the court;
>> . . . .
>> (4) the beneficiary consented to the trustee's conduct." K.S.A. 2019 Supp. 58a-
> 802(b)(1), (2), and (4).

13

Next is the duty of impartiality. That section of the law provides: "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." K.S.A. 58a-803.

After that comes the duty of prudent administration. K.S.A. 58a-804 states: "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."

This case does not involve an issue of whether Brad invested any of the trust assets poorly. Brad's conveyance of the royalty interests to himself could not withstand scrutiny if viewed as an investment. He did not make an investment in the trust's name; he distributed all the trust assets to himself as a beneficiary. Thus, the question becomes whether he violated a duty owed to the other beneficiaries by doing so.

A trustee's statutory duties can be modified by a trust instrument. But there are limits. Despite any language in the trust granting the trustee "uncontrolled" discretion, the terms of a trust cannot legally supersede the duties of a trustee to act in good faith and administer the trust for the benefit of the beneficiaries. At the start of the Trust Code, the Legislature established some basic rules that cannot be ignored:

> "(a) Except as otherwise provided in the terms of the trust, this code governs the duties and powers of a trustee, relations among trustees and the rights and interests of a beneficiary.
> "(b) The terms of a trust prevail over any provision of this code *except*:
> . . . .
>> (2) the duty of a trustee to act in good faith and administer the trust in accord with K.S.A. 58a-801, and amendments thereto;

14

> (3) the requirement that a trust and its terms be for the benefit of its
> beneficiaries." (Emphasis added.) K.S.A. 58a-105.

And then later in the Trust Code, the Legislature emphasized that a trustee must act in good faith:

> "Notwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of such terms as 'absolute,' 'sole,' or 'uncontrolled,' the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." K.S.A. 58a-814.

The various cases that have dealt with these laws have all recognized that while the intent of the grantor is paramount, the law limits a trustee. Even where the grantor intended the trustee to have as much power as possible over the trust, the law restricts that power. See *In re Ralph E. Breeding Trust*, 21 Kan. App. 2d 351, 357-58, 899 P.2d 511 (1995). The trustee must act in good faith and in the interests of the beneficiaries. While a trust can eliminate strict prohibitions, such as that against self-dealing, it cannot eliminate the duty of loyalty. That limit preserves the fundamental fiduciary character of trust relationships recognized by law. *Schartz v. Barker*, No. 104,812, 2013 WL 189686, at \*10 (Kan. App. 2013) (unpublished opinion) (quoting Restatement [Third] of Trusts § 78, comment c[2], p. 99 [2005]).

And Restatement (Third) of Trusts § 87, comment d, pp. 246-47 (2005), which deals generally with judicial control of a trustee's discretionary powers, is illuminating. It states in part:

> "Once it is determined that the power in question is held in the role of the trustee, however, words such as 'absolute' or 'sole and uncontrolled' or 'unlimited' are not interpreted literally. It is contrary to sound policy, and a contradiction in terms, to permit the settlor to relieve a *trustee* of all accountability. Even under the broadest grant of

15

fiduciary discretion, a trustee must act honestly and . . . 'in a state of mind contemplated by the settlor.' What this means is that courts will intervene to prevent trustees from acting in bad faith, or without regard to the terms and purposes of the trust or the interests of its beneficiaries . . . .

"Within these limits, it is a matter of interpretation to determine the degree to which a settlor's use of language of extended discretion (e.g., 'absolute discretion') manifests an intention to modify the normal duties of the trustee and the normal grounds of judicial intervention in the exercise of discretionary power. . . .

"Examination of the overall tenor of language granting powers and other terms of trusts may lead to diverse, refined interpretations on a case-by-case basis. For example, a court may conclude that the language of extended discretion and other evidence before it manifests a settlor intention to authorize the particular trustee to act with a lesser degree of *caution* (e.g., to accept a greater degree of compensated risk), but not a lesser degree of *care*, than would otherwise be appropriate to the particular trust and its circumstances under the duty of prudence." [Citations omitted.]

The duty of impartiality is an extension of the duty of loyalty. When the trustee is also a beneficiary, such as Brad here, the trustee has a permissible grantor-created conflict of interest that should be respected, yet the trustee's conduct should "be closely scrutinized for abuse, including abuse by less than appropriate regard for the duty of impartiality." Restatement (Third) of Trusts § 79, comment b(1) (2007).

Here, the unambiguous language of the trust shows:
- Sonya intended Brad to have as much power as possible under the law to manage the trust's principal and income;
- Brad was both a trustee and a beneficiary, entitled to receive distributions of income or principal from the trust; and
- Sonya intended the trust to be for the benefit of "all" her children.

16

It is that third point that cannot be reconciled with Brad's actions and implicates the duties of loyalty and impartiality.

The duty of impartiality is implicated because there were five beneficiaries, including Brad, with competing interests. Moreover, the transactions at issue involved trust property "entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests" implicating the duty of loyalty. See K.S.A. 2019 Supp. 58a-802(b). Such drastic action of conveying all the trust assets to oneself and nothing to the other four beneficiaries violates the duties of loyalty and impartiality unless authorized by an express provision of the trust. As stated above, interpretation of the trust instrument is a question of law. See *Hemphill*, 295 Kan. 1110, Syl. ¶ 2.

The terms of the trust authorized Brad to make distributions to himself from time to time as a beneficiary. This was a permissible conflict of interest. Separate from his entitlement as a beneficiary, the trust authorized Brad to purchase "and retain as investments" the real property belonging to Sonya's estate. The trust authorized Brad to operate a farm. In the operation of the farm, the trustee's determination of the amount of income and principal used to pay the expenses of the farming program "shall be conclusive on all concerned," and the trustee's determination of whether "cash received in the operation of farm land is income or principal shall be conclusive on all concerned." The trust authorized Brad to execute oil and gas leases, to execute conveyances of the minerals, and in his "uncontrolled discretion to convey or dispose of any mineral interest *purchased* or to execute and deliver any sales agreements, processing agreements, or any other agreement, conveyance, or contract convenient and/or usual in the management of oil and gas and other mineral properties." (Emphasis added.) Those rights are followed by the statement:

17

"All powers given to the trustee or trustees by this instrument are exercisable by the trustees only in a fiduciary capacity. No power given to the trustee or trustees hereunder shall be construed to enable any person to purchase, exchange, or otherwise deal with or dispose of the principal [or] the income therefrom for less than adequate consideration in money or money's worth."

While the trust instrument contemplates that Brad could buy Sonya's farm, use the trust income and principal to pay farming expenses, and convey or purchase mineral rights, such actions would be done in his role as a fiduciary, not as a beneficiary. Nowhere does the trust suggest that Sonya intended for Brad to empty the trust and transfer all its assets into his personal account as a beneficiary to operate his own personal farming operation. Brad cannot reasonably rely on any express provision of the trust to override his duties of loyalty and impartiality.

Brad testified repeatedly that he was relying on a promise he made to Sonya, which was not part of the trust instrument. Brad testified he was making an "investment" in the farm. But what is important here is not Brad's promise—but Sonya's intent when she created this trust for the benefit of all of her children. If she wanted Brad to have all of the royalty interests and the income from them, she could have given them to him as she did with the farm in her will. And there is no express language allowing Brad, as trustee, to set everything over to himself and his wife.

By conveying all of the income and royalty interests to himself, the trust essentially disappeared, and the "investment" benefited Brad alone rather than the other beneficiaries. And Brad informed none of the other beneficiaries that he intended to empty the trust. It does not appear he gave any thought to the other beneficiaries at all.

The district court erred by focusing only on the uncontrolled discretion language in the trust, without inquiry into whether Brad acted in good faith in the interests of the beneficiaries. The court held that the trust instrument imposed "no limitations" on the

18

trustee's powers. Even though the trust language gave Brad "uncontrolled discretion," it did not relieve him from his fiduciary duties as a trustee to act impartially in the interests of all the beneficiaries, rather than just himself. His fiduciary duties of loyalty and impartiality were limitations on his powers as trustee.

This narrow focus by the court ignored Sonya's clear intent to create this trust for the benefit of all of her children—not just Brad. The court's limited view essentially erased the other beneficiaries from the trust, which was not Sonya's intent because she named them as beneficiaries. Language giving a trustee uncontrolled discretion does not mean the trustee can disregard the other beneficiaries' interests to the trust. That is the bad precedent created by the court in its ruling here. A trustee, even one with great authority and discretion to act as Brad did here, has the duty to act as a fiduciary to all the beneficiaries.

*A note on remedies.*

The question of remedies was raised during the oral argument of this appeal. When a trustee violates a duty owed a beneficiary—here, the duties of loyalty and impartiality—it is a breach of trust. Various remedies for a breach of trust are listed in K.S.A. 58a-1001. The statute lists some specific remedies that a court can order, including compelling the trustee to pay money, voiding an act of the trustee, recovering trust property wrongfully disposed of or distributed, and removing the trustee.

Similarly, the Restatement (Third) of Trusts § 95 (2012) discusses possible remedies. Under § 100 (2012), the trust and its beneficiaries are to be made "whole, usually by restoring the trust estate and trust distributions to what they would have been" if the trust had been properly administered. The remedy may take the form of a money judgment or specific restitution.

Because the district court did not take up any possible remedies for a breach of trust, nor did the court address the defendants' statute of limitations defense, nor any other equitable defenses that could be raised, these issues must be considered by the court on remand.

*We address some final issues.*

Before trial, the district court found the trust was unambiguous and ruled parol evidence about Sonya's intent was inadmissible. Then, during the trial, the court did not permit Brad to testify about what Sonya told him because it was hearsay. But the court did permit Brad to testify that he promised his mother he would hold the farm together and that he understood he would use the oil money to do that. Brad testified he would not have accepted the executorship of the will or the trusteeship of the trust without that understanding.

The other beneficiaries contend that the district court at that point considered parol and hearsay evidence in violation of its ruling that it would not consider such evidence. They contend that Brad's testimony implied that he had an oral agreement with his mother that he would use all the oil income to maintain the farm bequeathed to him through the will to preserve the farm for future generations.

This is not reversible error. Even though the district court included that evidence in its statement of facts, the court did not rely on it in its discussion. The court did not mention Brad's promise to his mother in its analysis. Rather, the court referred to the language in the trust to decide that Sonya's intent was to give Brad unlimited discretion over the trust income and principal.

*Failure to make an annual accounting*

The other beneficiaries contend that the district court's factual findings differed from the evidence mainly because Jeanette testified she requested accountings of trust activity. In the alternative, they contend Brad was required under to provide annual accountings regardless of no request. See K.S.A. 2019 Supp. 58a-813(a).

The statute provides: "Except as otherwise provided under the terms of the trust" a trustee shall "[a]t least annually" send a trust report to a beneficiary "who actually received a distribution during such fiscal year" and to a beneficiary who requests such a report. K.S.A. 2019 Supp. 58a-813(b)(5).

Here, the trust provided that the trustee "shall each year render an account of his administration of the trust funds hereunder that the same shall be available for inspection by any of the beneficiaries at any reasonable time." The trust only required Brad to have an accounting available for the beneficiaries to inspect—it did not require Brad to send them such accounting. We view Brad's failure to at least prepare an annual accounting to be further evidence of his failure to act as a fiduciary in this trust. It certainly shows a betrayal of his loyalty to act as a fiduciary to the other beneficiaries.

Under the terms of the trust, Brad had to give only an accounting to the beneficiaries upon request. It is disputed whether such a request was made. Jeanette testified she did request an accounting. Brad testified that none of the beneficiaries requested an accounting. The district court found as a fact that no such request was made. "None of the Plaintiffs ever requested an accounting until during the litigation." The district court's factual finding was supported by substantial competent evidence. This court cannot and will not reweigh evidence or redetermine questions of fact. *In re B.D.-Y*, 286 Kan. 686, 699, 187 P.3d 594 (2008). There is no error here.

21

*Advice of counsel*

The other beneficiaries contend the district court improperly applied the common law of advice of counsel in its decision. They contend the advice of counsel defense cannot be used by a fiduciary, citing *McAdam v. Fireman's Fund Insurance Co.*, 203 Kan. 123, 127-28, 452 P.2d 851 (1969). *McAdam* involved a guardian that, upon advice of an attorney, made unauthorized investments from an incompetent minor's estate. The court held that the "mere fact that a fiduciary relies upon the advice of counsel cannot be regarded as an adequate excuse where his conduct is nevertheless careless and imprudent." 203 Kan. at 128. The *McAdam* court did not go into a detailed discussion about such a defense.

Here, the court stated:

"It should also be added that the court does not believe Brad violated the fiduciary duty owed as a trustee. He not only testified that he relied upon the terms of the trust, but also sought out the advice of others. He testified that an attorney told him that the oil income can be used to service debt. He also testified that as early as 1999 accountants and bankers were advising him to assign mineral interests. He also testified that bankers relied upon the terms of the trust in their business dealings with him and it was also their understanding that the income could be dealt with as it had been."

Taking the advice of counsel on certain aspects of trust administration is evidence of prudence on the part of a trustee. Here, guidance of counsel may be sought to review the terms of a trust to understand the powers and duties of the trusteeship and determining the beneficiaries and purposes of trust. Restatement (Third) of Trusts § 76, comment 2c (2007). But relying on the advice of counsel may not serve as a defense:

"Reliance on advice of counsel . . . is not a complete defense to an alleged breach of trust, because that would reward a trustee who shopped for legal advice that would support the

22

trustee's desired course of conduct or who otherwise acted unreasonably in procuring or following legal advice. In seeking and considering advice of counsel, the trustee has a duty to act with prudence. Thus, if a trustee has selected trust counsel prudently and in good faith, and has relied on plausible advice on a matter within counsel's expertise, the trustee's conduct is significantly probative of prudence." Restatement (Third) of Trusts § 77, comment b(2) (2007).

The duty of prudence under the Kansas Uniform Trust Code reads: "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." K.S.A. 58a-804.

We do not read the court's statement on this to be a defense of Brad's actions. It appears the court was using the fact that Brad sought the advice of counsel as a prudent trustee. We see no reversible error here.

*Erroneous finding of fact*

The district court found that on April 22, 2010, Brad conveyed some mineral interests from himself as trustee to himself individually. Both parties agree that this 2010 conveyance did not occur. There is no substantial competent evidence to support this finding of fact. We reverse that finding. The district court cannot consider such a conveyance when evaluating the statute of limitations defense on remand.

To summarize, we must reverse the district court's holding that, because Brad had uncontrolled or exclusive discretion over this trust, Brad could not be held accountable to the other beneficiaries for his actions.

Reversed and remanded with directions.