No. 126,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PETER D. SUTHERLAND,
*Appellant*,

v.

PERRY H. SUTHERLAND, TRUSTEE NORMA H. SUTHERLAND MASTER GST TRUST, and
PERRY H. SUTHERLAND, TRUSTEE NORMA H. SUTHERLAND REVOCABLE TRUST UTA
5/13/1996,
*Appellees*.

SYLLABUS BY THE COURT

1.

Parties in a judicial action must have standing as part of the Kansas case-or-controversy requirement imposed by the judicial power clause of article 3, section 1 of the Kansas Constitution. The standing inquiry asks whether a party has a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf.

2.

At the pleading stage, the party asserting standing has the burden to establish a prima facie case of standing, that is, a basis when viewed in the light most favorable to the party. The determination of jurisdiction and standing rests on the facts in existence at the time of filing.

3.

Authentication of evidence is addressed in K.S.A. 2024 Supp. 60-464(a), which requires only that the proponent must produce evidence sufficient to support a finding

1

that the item is what the proponent claims it is. The burden of authentication is minimal or slight, and there is no precise formula for district judges to determine authenticity.

4.

The Kansas Uniform Trust Code (KUTC) is a substantial adoption of the Uniform Trust Code (UTC) and the primary intent of both is to carry out the settlor's intent.

5.

K.S.A. 2024 Supp. 58a-105(b) provides that, subject to a few enumerated exceptions, the terms of a trust prevail over any provision of the KUTC.

6.

Kansas courts apply a two-part analysis to determine whether a no-contest clause should be enforced against a beneficiary. First, the court determines whether the beneficiary's actions violated the express terms of the no-contact clause. Second, the court determines whether the beneficiary had probable cause to take those actions.

7.

No-contest provisions included in a trust should be strictly construed against forfeiture.

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Oral argument held March 11, 2025. Opinion filed April 11, 2025. Affirmed in part and reversed in part.

*John T. Bullock*, of Seyferth Blumenthal & Harris LLC, of Kansas City, Missouri, for appellant.

*Todd N. Thompson* and *Adam M. Hall*, of Thompson-Hall P.A., of Lawrence, for appellee Perry H. Sutherland, Trustee Norma H. Sutherland Master GST Trust.

2

*Greg L. Musil*, *Brett C. Randol*, and *James T. Schmidt*, of Rouse Frets White Goss Gentile Rhodes, P.C., of Leawood, for appellee Perry H. Sutherland, Trustee Norma H. Sutherland Revocable Trust UTA 5/13/1996.

Before MALONE, P.J., SCHROEDER and CLINE, JJ.

MALONE, J.:  This is a trust case governed by the Kansas Uniform Trust Code (KUTC), K.S.A. 58a-101 et seq. Peter D. Sutherland appeals the district court's grant of summary judgment and other rulings against him on his petition for declaratory judgment. Norma H. Sutherland passed away in 2019. During her lifetime she established a revocable trust for the benefit of her husband and children. She also established a generation skipping trust for the benefit of her grandchildren and other relatives. The revocable trust is supposed to fund the generation skipping trust. Norma's son, Perry H. Sutherland, is the designated trustee of both trusts. Peter is one of the grandchildren.

About a year after Norma's death, Peter filed a petition for declaratory judgment against the trustee of both trusts seeking information about the trusts, particularly about the revocable trust instrument and its assets. The district court dismissed Peter's petition against the trustee of the revocable trust for lack of standing. The district court ultimately granted summary judgment for the trustee of the generation skipping trust and also ruled that the petition triggered the forfeiture provisions of that trust instrument resulting in Peter forfeiting his right to receive any benefits under the generation skipping trust.

On appeal, Peter claims (1) the district court erred in granting summary judgment for the trustee of the generation skipping trust; (2) the district court erred in finding Peter forfeited his rights under that trust; and (3) the district court erred in finding Peter lacked standing to sue the trustee of the revocable trust. After thoroughly reviewing the record, we reverse the forfeiture ruling but otherwise affirm the district court's judgment.

3

Norma H. Sutherland passed away on October 28, 2019. Before her death, Norma established a plan to distribute her estate assets that included two trusts: the Norma H. Sutherland Trust UTA 5/13/1996 (the "Revocable Trust" or "RT") and the Norma H. Sutherland Master GST (the "Generation Skipping Trust" or "GST"). The RT was established for the benefit of Norma's husband and their children, while the GST was established for the benefit of her grandchildren and other relatives. In a section titled "Purpose of Trust," the GST stated that it was "intended to be the receptacle following my death of exempt property allocated among certain of my grandchildren and more remote descendants pursuant to the [RT]." Norma named her son, Perry, as the trustee of the GST and the first successor trustee of the RT. Perry was also a beneficiary of the RT.

There apparently is a history of tension between Perry and his nephew, Peter. As far back as 2004, Peter emailed his father expressing concerns about being shut out of the family company and Perry allegedly running the company into the ground. The day after Norma died, Peter sent a letter to Perry advising that he wanted to meet "to discuss the ongoing Family situation and a partition of Family-held assets." Peter also stated that he desired Perry's removal as trustee of Norma's trusts, and that he was willing to handle the matter privately but would not hesitate to file legal action if needed.

On December 11, 2019, Peter and the other grandchildren received a letter from an attorney, Eric Hansen, informing them that they were the beneficiaries of the GST. The letter included a copy of the trust instrument signed by Norma on May 15, 2007, and designating Perry as trustee. The letter explained: "The Trust is currently unfunded. The amount with which the Trust will be funded is unknown. That information is not likely to be available for several months, perhaps as long as one (1) year. As further information is available, it will be forwarded to you." The letter also advised that the beneficiaries

should pay attention to the GST's "Forfeiture Provisions," which prohibited a range of actions, and it also encouraged them to discuss the trust with their own legal counsel.

On August 10, 2020, Peter sent a letter to Hansen requesting a copy of the RT instrument "[t]o assist [him] in understanding [his] interests with respect to the trust." The letter also noted various transactions taken by Perry, which Peter alleged "relate[d] to [his] economic interests." Peter stated that he would be happy to review any information Perry was willing to send him about the transactions. He did not receive any response.

On October 23, 2020, Peter filed a petition for declaratory judgment and other relief against Perry in his role as both the trustee of the RT and the trustee of the GST. Peter alleged that he had been denied information about the RT, which he contended was critical for him to protect his interests and to ensure that the GST was properly funded. The petition included two counts—one titled "Trust Instrument Including Amendments" and the other titled "Disclosure of Assets"—both of which sought information about the GST's funding source, the RT. In Count I, Peter requested the district court to order (1) "that [he] and the other qualified beneficiaries of the GST Trust are entitled to receive a copy of the [RT]"; (2) "for the trustee of the GST Trust to provide its name, address, and telephone number"; and (3) that he and the other beneficiaries "retain their rights under K.S.A. 58a-604 to contest the validity of any trust hereafter provided to them." In Count II, Peter asked the district court to order that he and the other GST beneficiaries "are entitled to be informed as to the assets of the [RT] and a full accounting for the [RT]." The petition did not seek to remove Perry as trustee of either trust.

Perry, acting as both the trustee of the GST and the RT, moved to dismiss Peter's petition. In the motion, Perry argued that Peter lacked standing to seek information and an accounting of the RT because he was not a qualified beneficiary of the RT and his status as a beneficiary of the GST did not entitle him to the information he requested.

5

Perry also asserted that Peter already had been provided all the requested information about the GST that he was entitled to receive. Peter responded to the motion and asserted many arguments why his petition should not be dismissed against either trustee.

On January 28, 2021, Hansen sent a letter to Norma's grandchildren on behalf of Perry as the GST trustee. The letter stated that the tax return for Norma's estate was about to be filed and it was now "likely to be a period of years" before distribution to the GST would occur. The letter included an accounting that showed the trust did not have any assets as of December 31, 2020.

On February 16, 2021, after considering the parties' arguments on the motion to dismiss, the district court dismissed the petition against Perry as RT trustee for lack of standing but denied the motion to dismiss Peter's petition against Perry as GST trustee. The district court found that Peter's petition against the GST trustee could proceed because Peter was a qualified beneficiary of that trust. But the district court found that Peter lacked standing individually to sue the RT trustee because Peter was not a qualified beneficiary of that trust. The district court added "the proper party to initiate such an action against that trust would be the trustee of the GST trust."

After the ruling on the motion to dismiss, Perry, acting as the GST trustee, answered Peter's petition for declaratory judgment denying most of the substantive claims. Perry also asserted a counterclaim, alleging Peter had violated the forfeiture provisions of the GST by sending his demand letter, filing his lawsuit, seeking information he was prohibited from receiving by the express language of the RT, and challenging the suitability of the GST trustee.

Over the following months, the parties proceeded with discovery. Peter repeatedly asked for a copy of the RT instrument, financial statements, accountings, and tax returns

for the RT, and all communications by Perry about the GST and RT. Perry responded that he did not have the requested information or that it was not in the GST trustee's possession or control. But Perry did provide certain provisions purportedly from the RT instrument: Article 10 (Forfeiture Provisions), Article 11 (Trust Privacy Policy), and Article 12 (Interpretive Provisions and Definitions). In a sworn affidavit, Perry explained he had received these provisions in a letter from the RT's attorney, Hansen, on November 21, 2019. The letter explained that "Mrs. Sutherland's Revocable Trust [RT] places severe limitations on my ability to provide you with additional information." Article 11 of the RT contained several provisions limiting the amount of information and notification its beneficiaries were entitled to obtain from the trustee. As for what information the trustee was authorized to disclose about the RT, Article 11.05 stated: "To properly inform a beneficiary of the limits of that beneficiary's rights and interests, the trustee is authorized to provide any requesting party the terms of Articles 10, 11 and 12."

On October 19, 2021, before the deadline for completion of discovery, Perry moved for partial summary judgment on Peter's claims against him as GST trustee, but not on Perry's counterclaim against Peter. Perry asserted that all of Peter's requests for relief either had been met or dismissed—he argued that the court had found that Peter did not have a right to the RT information that he sought, that Perry had already provided his name, address, and phone number as the GST trustee, and that the court could not order a blanket declaration about Peter's rights under K.S.A. 58a-604. Peter responded to the summary judgment motion. Around this time, Peter filed a golden rule letter, a motion to compel discovery of additional information about the RT, and notices of intent to issue subpoenas to the RT and to the GST's bank, University National Bank of Lawrence.

On April 1, 2022, at a hearing on the parties' various pending motions, the district court granted Perry's motion for partial summary judgment on Peter's petition, denied Peter's motion to compel, and denied Peter's request for a subpoena to the RT and the

7

bank. The district court found that Peter already had received the GST trustee's name, address, and phone number. Moreover, the district court noted that Peter had been provided with information about the status of the funding of the GST. Turning to the disclosure of information about the RT, the district court recited portions of the privacy provisions of the RT instrument in Article 11 that expressly limited the disclosure of certain information about the trust to the beneficiaries and limited the beneficiaries' ability to compel disclosure about the trust's assets.

After quoting from the privacy provisions of Article 11, the district court explained that Peter was not entitled to receive information related to the administration of the RT because he was not a qualified beneficiary. The district court observed that the KUTC's primary goal is to carry out the settlor's intent. The district court found that K.S.A. 2021 Supp. 58a-105(b) provides that trust terms can override the KUTC's default provisions. As a result, the district court observed that the KUTC "allows settlors to eliminate the duty to inform qualified beneficiaries or even provide trust documents." The district court observed that, even if Peter were a qualified beneficiary, Norma "unambiguously expressed her intent to keep the trust and tax returns private."

As for Peter's motion to compel and requests for subpoenas, the district judge explained: "If I were to grant the subpoena requests, it would completely undermine the settlor's intent of keeping that information private. I understand that limiting this information may make uncovering a breach difficult, but that was likely waived by the legislature when it chose to enact this statute [K.S.A. 58a-105(b)]." Finally, the district court noted that because Peter had not alleged "a breach of fiduciary duty or trust" but had moved only for an "accounting and disclosure of assets," there was no need for court intervention in the trust's administration under K.S.A. 58a-201.

8

On July 5, 2022, Perry moved for summary judgment on his counterclaim that Peter had violated the forfeiture provisions of the GST. Perry argued that a material purpose of Norma's estate plan was to maintain the confidentiality of information, and Peter had intentionally, and without probable cause, sought to undermine that purpose with his lawsuit. Perry contended that Peter's actions violated the forfeiture provisions because he had effectively contested both the GST and RT by threatening to sue to remove Perry as trustee and demanding a copy of the RT instrument and an accounting of its assets. Peter responded to the summary judgment motion and controverted many of the factual claims. He argued that his petition for declaratory judgment did not trigger the GST's forfeiture provisions and that he acted with probable cause and in good faith.

At a hearing on September 28, 2022, the district court granted Perry's motion. The district court concluded, as a matter of law, that Peter's petition for declaratory judgment was in effect a contest of the GST instrument. The district court reasoned that Peter's claims of legal and equitable entitlement to receive and inspect the RT instrument and his attempt to receive a full accounting of the RT's assets triggered the GST's forfeiture provisions. At a hearing on October 31, 2022, the district court supplemented its forfeiture ruling, finding that Peter's actions demonstrated a lack of probable cause.

Peter's motion to reconsider or to alter or amend the judgment was denied. The GST trustee's motion for an award of attorney fees also was denied. The district court eventually entered final judgment for the GST trustee. Peter timely appealed the district court's summary judgment and prior adverse rulings.

On appeal, Peter claims (1) the district court erred in granting summary judgment against him in favor of the GST trustee; (2) the district court erred in finding Peter forfeited his beneficiary rights under the GST; and (3) the district court erred in finding he lacked standing to sue the RT trustee. We will address the final claim first.

9

## DID THE DISTRICT COURT ERR IN FINDING PETER LACKED STANDING TO SUE THE RT TRUSTEE?

Peter claims the district court erred in finding he lacked standing individually to sue the RT trustee and dismissing Peter's petition for declaratory relief against the RT trustee on that ground. The district court found that Peter lacked standing individually to sue the RT trustee because Peter was not a "qualified beneficiary" of the RT under K.S.A. 2022 Supp. 58a-813. The RT trustee contends the district court correctly found that Peter lacked standing because he was not a qualified beneficiary of the RT and only a qualified beneficiary of a trust may individually file suit against the trustee.

Whether a party has standing is "a question of law over which an appellate court's scope of review is unlimited." *In re Estate of Mouchague*, 56 Kan. App. 2d 983, Syl. ¶ 2, 442 P.3d 125 (2019). "Parties in a judicial action must have standing as part of the Kansas case-or-controversy requirement imposed by the judicial power clause of Article 3, § 1 of the Kansas Constitution." 56 Kan. App. 2d at 986 (citing *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 [2008]). "The standing inquiry asks whether a party has a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf." *Mouchague*, 56 Kan. App. 2d at 986 (citing *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 [2016]). "At the pleading stage, the party asserting standing has the burden to establish a prima facie case of standing, that is, a basis when viewed in the light most favorable to the party." *Mouchague*, 56 Kan. App. 2d at 987 (citing *In re Adoption of T.M.M.H.*, 307 Kan. 902, 915-16, 416 P.3d 999 [2018]). "The determination of jurisdiction and standing rests on the facts in existence at the time of filing." *Mouchague*, 56 Kan. App. 2d at 987 (citing *Grupo Dataflux v. Atlas Global Group, L. P.*, 541 U.S. 567, 580, 124 S. Ct. 1920, 158 L. Ed. 2d 866 [2004]).

Peter's petition alleged that he had standing under K.S.A. 58a-201(a). That statute provides that a "court may intervene in the administration of a trust to the extent its jurisdiction is invoked *by an interested person* or as provided by law." (Emphasis added.) K.S.A. 58a-201(a). On appeal, Peter similarly contends that he has standing under K.S.A. 58a-201(a) as an "interested person" because the RT is the funding source of the GST, of which he is a qualified beneficiary. He contends that "interested person" as used in K.S.A. 58a-201(a) includes a broader class of individuals than merely those who are direct parties to a trust. Conversely, the RT trustee asserts that "interested person" under K.S.A. 58a-201(a) refers to a trustee or a qualified beneficiary of the trust.

The interpretation and application of a statute presents a question of law over which an appellate court exercises unlimited review. See, e.g., *In re Joint Application of Westar Energy and Kansas Gas and Electric Co*., 311 Kan. 320, 328, 460 P.3d 821 (2020). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). Only if the statute's language or text is unclear or ambiguous will this court resort to canons of construction or legislative history to construe legislative intent. *Chalmers v. Burrough*, 314 Kan. 1, 8, 494 P.3d 128 (2021).

The definitional section of the KUTC defines, "Beneficiary," "Interests of the beneficiaries," "Person," and "Qualified beneficiary"—it does not define "interested person." See K.S.A. 2024 Supp. 58a-103. The only portion of the KUTC that explicitly defines the phrase is K.S.A. 2024 Supp. 58a-111, titled "Nonjudicial settlement

11

agreements," which states: "For purposes of this section, 'interested persons' means persons whose consent would be required in order to achieve a binding settlement were the settlement to be approved by the court." While not directly applicable to resolving the question before this court, this definition parallels the common definition of the phrase—implying a person with a direct legal stake in the trust. Black's Law Dictionary defines an "interested person" as "[a] person having a property right in or claim against a thing, such as a trust or decedent's estate." Black's Law Dictionary 1377 (12th ed. 2024).

Peter contends that the use of "interested person" in the statute cuts against the RT trustee's interpretation: "Obviously, when the legislature chose the phrase 'interested person' for K.S.A. 58a-201(a), it knew how to use the words 'trustee,' 'beneficiary' and 'qualified beneficiary,' but opted to use 'interested person' instead." Indeed, Peter argues "there is nothing in the trust code that restricts who may bring suit seeking information not provided by a trustee as required under law." No one can deny that Peter may benefit from the performance of the RT because it is the funding source for the GST of which he is a beneficiary. While this is true, the interpretation Peter suggests—allowing anyone with a remote interest in a trust to demand trust information—would produce results that render other provisions of the KUTC meaningless. See Restatement (Third) of Trusts § 48, comment a (2003) ("Persons who may incidentally benefit in some manner from the performance of the trust are not beneficiaries of the trust and cannot enforce it.").

Only four Kansas appellate opinions have cited K.S.A. 58a-201, and none of them directly addressed the definition of "interested person" as used in the statute. See *Tharrett v. Everett*, No. 125,999, 2024 WL 1954298 (Kan. App.) (unpublished opinion), *rev. granted* 319 Kan. 836 (2024); *Sell v. Dorian*, No 117,199, 2018 WL 3320977 (Kan. App. 2018) (unpublished opinion); *Drisko v. Drisko*, No. 104,177, 2011 WL 4716348 (Kan. App. 2011) (unpublished opinion); *Baker v. Tustin*, No. 96,956, 2007 WL 3341748 (Kan. App. 2007) (unpublished opinion). Each of these cases involved a trustee or beneficiary

12

bringing the suit. As the RT trustee notes: "No Kansas court has expanded the definition of 'interested person' beyond that of a trust beneficiary or a trustee."

The RT trustee observes that the relief Peter seeks arises from the statutory duties and obligations of a trustee found in K.S.A. 2024 Supp. 58a-813. Accordingly, whether Peter has standing to bring this lawsuit rises or falls with whether he is entitled to relief under K.S.A. 2024 Supp. 58a-813. This assertion has merit.

Peter's lawsuit sought information about the RT. The type of information Peter sought—a copy of the trust instrument and material information about the RT's assets and administration—must be provided to "qualified beneficiaries" under K.S.A. 2024 Supp. 58a-813. More specifically, K.S.A. 2024 Supp. 58a-813(a) requires that "a trustee shall keep the qualified beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." K.S.A. 2024 Supp. 58a-813(b) further details the general requirements relating to a trustee's duty to inform and report to qualified beneficiaries. This is exactly the type of information Peter's lawsuit sought. But as Peter is not a qualified beneficiary—that is, he was not, as of the date in question, "eligible to receive mandatory or discretionary distributions of trust income or principal"—he was not entitled to receive such information. See K.S.A. 2024 Supp. 58a-103(12)(A) (definition of "qualified beneficiary").

We find that the phrase "interested person" as used in K.S.A. 58a-201(a) refers only to persons who are parties to the trust, that is the settlor, the trustee, and any beneficiaries. Peter concedes that he is not a qualified beneficiary of RT and is at most a contingent beneficiary as he will incidentally benefit from the RT as a beneficiary of the GST, which draws its funding from the RT. But Peter's beneficial interest in the GST does not confer standing upon him to bring a direct action against the RT trustee to

13

compel the disclosure of information. Peter's status as a qualified beneficiary of the GST was insufficient to grant standing as an interested party under K.S.A. 58a-201(a).

In ruling that Peter lacked standing to sue the RT trustee, the district court also cited *Mouchague* for the proposition that "the proper party to initiate such an action against that trust would be the trustee of the GST trust." Peter asserts the district court's reliance on *Mouchague* was in error and spends much of his brief arguing that the district court misapplied that case to our facts. But we need not engage in this analysis because the district court's reliance on *Mouchague* was not central to its ruling dismissing Peter's individual claims against the RT trustee. The district court dismissed Peter's individual claims against the RT trustee for lack of standing because Peter was not a qualified beneficiary of that trust. Whether the proper party to initiate the action would have been the trustee of the GST trust was not the issue before the district court.

Similarly, the RT trustee spends a substantial portion of their brief arguing that Peter lacked derivative standing to sue the RT trustee on behalf of the GST. But in both district court and on appeal, Peter clarifies that he brought his lawsuit individually and not on behalf of the GST. Whether Peter could have brought his lawsuit against the RT trustee on behalf of the GST trustee and all the beneficiaries of the GST is an issue we need not decide. Considering that Peter concedes he is not alleging derivative standing on behalf of the GST, we need not consider this portion of the parties' arguments.

In sum, we conclude the district court did not err in finding that Peter lacked standing individually to sue the RT trustee because Peter was not a "qualified beneficiary" of the RT under K.S.A. 2024 Supp. 58a-813. Peter's interest in the GST did not make him an "interested person" who could seek judicial intervention in the administration of the RT under K.S.A. 58a-201(a). The district court did not err in granting the RT trustee's motion to dismiss Peter's petition for lack of standing.

14

Peter claims the district court erred in granting summary judgment for the GST trustee. Peter makes three basic arguments: (1) The district court erroneously considered the isolated provisions of the RT instrument (Articles 10-12) in granting summary judgment because they were not admissible evidence; (2) even if the isolated provisions of the RT instrument were admissible evidence, the district court erroneously interpreted those provisions and erred by giving effect to them in contravention of the KUTC and common-law trust principles; and (3) the district court improperly limited discovery based on its erroneous interpretation of the isolated provisions of the RT instrument and improperly granted summary judgment before completion of discovery. The GST trustee contends the district court properly granted summary judgment because Peter was not entitled to receive the information he was seeking about the RT and an accounting of its assets, as shown by the terms of the RT instrument available to the GST trustee.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021).

After the district court dismissed Peter's petition against the RT trustee for lack of standing, it eventually granted summary judgment for the GST trustee on Peter's

remaining claims. The district court also denied Peter's motion to compel discovery and requests for subpoenas. The district court found that Peter had received the information he requested about the GST trust. Turning to the disclosure of information about the RT, the district court recited portions of the privacy provisions of the RT instrument in Article 11 that expressly limited the disclosure of information about the trust to the beneficiaries and limited the beneficiaries' ability to compel disclosure of the trust's assets.

Based on these provisions, the district court concluded that the plain language of the RT instrument displayed Norma's intent to keep information about the trust private, to strictly limit the amount of information its qualified beneficiaries could receive as well as the trustee's duty to inform the beneficiaries. The district court then noted that Peter was not a qualified beneficiary of the RT and that even if he was, he would not be entitled to receive the information about the RT that his lawsuit sought because Norma had "unambiguously expressed her intent to keep the trust and tax returns private. And the KUTC permits settlors to exercise that right. The privacy provisions eliminated the trustee's duty to provide information about the revocable trust to the beneficiaries." The district court explained that it was also denying Peter's subpoena requests and motion to compel the disclosure of the RT instrument based on the same privacy provisions.

*Admissibility of the isolated provisions of the RT instrument*

Peter argues that the district court erroneously considered the isolated provisions of the RT instrument (Articles 10-12) in granting summary judgment because they were not admissible evidence. The GST trustee argues that the district court properly considered the isolated provisions of the RT instrument in ruling on the motion.

Generally, evidence should not be considered by a court ruling on a motion for summary judgment if that evidence would not meet the standards for admissibility that would apply at trial. See Kansas Supreme Court Rule 141(d) (2024 Kan. S. Ct. R. at 221)

16

(providing that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). The only statutory basis that Peter cites to support his contention that the provisions of the RT instrument were inadmissible is K.S.A. 2024 Supp. 60-467(a), which provides that "[a]n original writing, recording or photograph is required in order to prove its content unless these rules or a statute provide otherwise." Peter does not address the fact that K.S.A. 2024 Supp. 60-467 broadly permits a litigant to admit duplicates in lieu of an original document. See K.S.A. 2024 Supp. 60-467(b), (h)(4). Moreover, as noted by the GST trustee, K.S.A. 2024 Supp. 60-467(d)(2) provides that "[a]n original is not required and other evidence of the content of a writing, recording or photograph is admissible if . . . the writing, recording or photograph is outside the reach of the court's process and not procurable by the proponent." The privacy provisions of the RT instrument appear to have prevented the procurement of the entire instrument by Perry as the GST trustee.

Although Peter does not flesh out his argument on the applicability of K.S.A. 2024 Supp. 60-467, it appears that he is actually arguing that the isolated provision of the RT instrument was inadmissible because it was not authenticated—not because it was not the original version of the document. He asserts that the isolated provision of the RT instrument was "unsigned" and there "was no way for the district court to determine if they were part of a document that was ever executed by Norma."

Authentication of evidence is addressed in K.S.A. 2024 Supp. 60-464(a), which requires only that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "The burden of authentication is 'minimal' or 'slight' and there is 'no precise formula' for district judges to determine authenticity." *State v. Jenkins*, 311 Kan. 39, 50-51, 455 P.3d 779 (2020). Once that burden is met, any "'discrepancies and other conflicting evidence go to the weight, not the admissibility, of the writing.'" 311 Kan. at 51. The district court has considerable

17

discretion in making evidentiary rulings about the authentication of evidence—so long as the proponent presents evidence to support a finding that the item is what the proponent claims. 311 Kan. at 51 (referring to standard of review as abuse of discretion).

Perry argues the isolated provisions of the RT instrument were authenticated because he attested in a sworn affidavit that he had received them as an attachment to the letter the RT's attorney, Hansen, sent him shortly after Norma's death. In Hansen's letter to Perry—which he refers to as the "Revocable Beneficiary Letter"—he explained that the GST was a beneficiary of the RT but that the privacy provisions of the RT instrument "place[] severe limitations on [his] ability to provide you with additional information" beyond the fact that the GST was a beneficiary. Hansen noted that the RT instrument expressly provided: "To properly inform a beneficiary of the limits of that beneficiary's rights and interests, the trustee is authorized to provide any requesting party the terms of Articles 10, 11 and 12." Hansen included those three provisions with his letter, Perry later provided them to Peter, and the district court then relied on them in making its summary judgment ruling. Peter's brief does not mention Perry's sworn affidavit.

K.S.A. 2024 Supp. 60-256(c)(2) refers to a court making a summary judgment decision based on the "pleadings, the discovery and disclosure materials on file, and any affidavits or declarations." The statute essentially mandates that the court should consider all matters of evidentiary value—notably each of the evidentiary materials referenced in the statute are generally verified or made under oath. Perry swore to the authenticity of the isolated provisions of the RT instrument that he received from the RT's attorney. The burden of authentication is "minimal" or "slight" and there is no precise formula for the district court to determine authenticity. *Jenkins*, 311 Kan. at 50-51. We review the district court's evidentiary rulings about the authenticity of evidence for an abuse of discretion. 311 Kan. at 51. Here there was sufficient evidence "to support a finding that the item is what the proponent claims it is." K.S.A. 2024 Supp. 60-464(a). We conclude the district

18

court did not err by considering the isolated provisions of the RT instrument that Perry produced in discovery in ruling on the motion for summary judgment.

*Interpretation of the RT instrument and the decision granting summary judgment*

Peter contends that even if the isolated provisions of the RT instrument were admissible evidence, the district court erroneously interpreted those provisions and erred by giving effect to them in contravention of the KUTC and common-law trust principles. The GST trustee contends the district court correctly found that the unambiguous language of the RT instrument showed Norma's intent to maintain the privacy of the trust.

An appellate court exercises unlimited review over a district court's legal interpretation of a trust as well as any statutory interpretation. See *Hemphill v. Shore*, 295 Kan. 1110, Syl. ¶ 2, 289 P.3d 1173 (2012). The KUTC is a substantial adoption of the Uniform Trust Code (UTC)—the primary intent of both is to carry out the settlor's intent. *Godley v. Valley View State Bank*, 277 Kan. 736, 741, 89 P.3d 595 (2004); *In re Bradley Trust*, 60 Kan. App. 2d 66, 75, 490 P.3d 51 (2021) ("The primary intent of both the KUTC and the UTC 'is to carry out the settlor's intent.'"). "If the trust language is plain and unambiguous, then the [settlor's] intent can be ascertained from language used." *Hemphill*, 295 Kan. at 1118.

The isolated provisions of the RT instrument provided by the GST trustee in discovery stated in relevant part:

"11.02 Information Following My Death

"(a) Other Interests. Following my death, *it is . . . my express direction that the trustee's duty to inform and report as to the trust activities, trust assets, and the terms of this instrument shall be limited such that no person or entity named as a beneficiary hereunder* (whether of personal property, specific property amount or percentage,

19

residual amount or percentage, or contingent interest) *shall have the authority to require the trustee to disclose the nature, extent, or identity of any other bequest or beneficial interest*; and any state law provisions to the contrary shall not be applicable under this instrument.

"(b) Trust Assets, Reports and Returns. Except as otherwise provided, *no beneficiary* (whether of personal property, specific property amount or percentage, or residual amount or percentage) *shall be entitled to a report of the nature and extent of the trust assets or the terms of this instrument, nor require a complete accounting of all trust activities*, or to obtain state or federal income, estate, or inheritance tax returns applicable to the entire trust, except for such limited information as may affect the future taxation or deductibility of amounts received upon my death, whether such funds passed according to the terms of this instrument or otherwise.

. . . .

"11.05 Trustee Authorization to Disclose Terms of this Article. To properly inform a beneficiary of the limits of that beneficiary's rights and interests, the trustee is authorized to provide any requesting party the terms of Articles 10, 11, and 12. "

(Emphases added.)

Article 11.02(a) restricts a trust beneficiary's right to request the trustee to disclose the nature, extent, or identity of "any other bequest or beneficial interest" in the RT, but the provision does not restrict a beneficiary from seeking information relative to their own interest in the trust. Article 11.02(b) goes much further and expresses Norma's intent that the trustee's duties to inform its beneficiaries about the trust were severely restricted, such that no beneficiary is permitted to demand that the trustee disclose the nature of the assets of the trust or the terms of the instrument or receive an accounting of its activities. There is no dispute that Peter is not a qualified beneficiary of the RT—the GST itself is a qualified beneficiary because the RT is its funding mechanism. But even if Peter were a qualified beneficiary of the RT, he would not be entitled to receive the information he demanded in his lawsuit because of the limits on information the trustee is required to give, according to Norma's intent. In short, Norma desired for even the qualified beneficiaries of the RT to receive as little information about the trust and its assets as

20

possible, and Article 11.05 provided that the only provisions of the RT instrument that should be disclosed were the three articles that Perry produced to Peter in discovery.

Peter argues that even if the district court correctly interpreted Norma's intent to restrict essentially all information about the trust and its assets—as manifested in the plain language of the RT instrument—it should have found that those provisions were void and unenforceable because they improperly insulated the trustee from any accountability to the beneficiaries. But, as the GST trustee points out, Kansas law allows a settlor to limit beneficiaries' access to trust-related information, if so desired. K.S.A. 2024 Supp. 58a-813(b) provides: "*Except as otherwise provided under the terms of the trust*, a trustee shall [provide the beneficiaries with a copy of the trust instrument upon request and perform other duties to inform and report to trust beneficiaries]." (Emphasis added.) Similarly, K.S.A. 2024 Supp. 58a-105(b) provides that, subject to a few enumerated exceptions, the "terms of a trust prevail over any provision of [the KUTC]." Exceptions include things like the requirements for creating a trust, the fiduciary duties of the trustee, the court's power to intervene in trust administration, and that the trust have a purpose that is lawful—but the settlor's ability to limit the trustee's duties to inform and report to trust beneficiaries under K.S.A. 2024 Supp. 58a-813 is not one of the exceptions to the general rule that the terms of a trust prevail over the provisions of the KUTC. See K.S.A. 2024 Supp. 58a-105(b)(1)-(12). As the UTC Comments explain:

> "The Uniform Trust Code is primarily a default statute. While this Code provides numerous procedural rules on which a settlor may wish to rely, the settlor is generally free to override these rules and to prescribe the conditions under which the trust is to be administered. With only limited exceptions, the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary are as specified in the terms of the trust." K.S.A. 2024 Supp. 58a-105, UTC Comments.

21

Peter claims the privacy provisions of the RT instrument violate the fiduciary duties of loyalty, impartiality, and prudence imposed on all trustees. He cites *Roenne v. Miller*, 58 Kan. App. 2d 836, 475 P.3d 708 (2020), for the proposition that a trustee must abide by their fiduciary duties of loyalty, impartiality, and prudence even when the trust instrument provides the trustee with absolute discretion in making distributions to the beneficiaries. While this proposition may be correct, Norma was permitted to place significant privacy-related restrictions on her trust, and Peter makes no claim that the GST trustee violated any fiduciary duties by abiding by the privacy restrictions. The main goal of the KUTC is to carry out the settlor's intent. *Godley*, 277 Kan. at 741. The district court properly gave effect to Norma's expressed intent to alter the trustee's duties to inform and report to trust beneficiaries.

Turning to the district court's application of the RT instrument to the facts of the case, Peter argues that "[t]he GST trustee's duties to maintain and disclose information to GST beneficiaries are not governed by the [RT], but by the GST, the trust code, and common law," and he asserts that the district court "erroneously applied the [provisions of the RT instrument] to adjudicate [his] claims against the GST trustee." But based on the above analysis of the privacy provisions of the RT instrument, whether the district court properly granted summary judgment for the GST trustee is straightforward. Peter was not entitled to receive a copy of the RT instrument or an accounting of its assets under any theory set forth in his petition. His status as a qualified beneficiary of the GST did not entitle him to any information about the funding status of the trust beyond what he received from the trustee—which at the time he filed his petition was that the GST was presently unfunded. Moreover, even if Peter was a qualified beneficiary of the RT, he would not have been entitled to the information about the RT instrument and its assets due to the RT's strict privacy-related provisions. The district court properly applied the privacy provisions in the RT instrument to the facts of the case.

22

*The district court's limitation of discovery by granting summary judgment*

Peter argues that the district court improperly limited discovery based on its erroneous interpretation of the isolated provisions of the RT instrument and improperly granted summary judgment before completion of discovery. The GST trustee maintains the district court properly limited Peter's attempts to "go on a fishing expedition" due to the RT instrument's limited disclosure of the information Peter sought.

Generally, summary judgment should not be granted until after discovery has been completed. That said, "if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). The granting of summary judgment before the completion of discovery is a matter within the district court's discretion and will be upheld unless clearly erroneous. *Gragg v. Wichita State University*, 261 Kan. 1037, 1061, 934 P.2d 121 (1997).

The only outstanding discovery matters pending at the time the district court granted summary judgment were Peter's motion to compel and his requests for subpoenas. These pending matters involved Peter's requests for a copy of the entire RT instrument and an accounting of the assets of the RT, which the district court had already found Peter was not entitled to receive under the plain terms of Norma's trusts. The district court explained that it was limiting the scope of Peter's discovery because to do otherwise "would completely undermine the settlor's intent of keeping that information private." Peter argues that the court's limitation of discovery denied him the opportunity to seek evidence of Perry's alleged mismanagement of the trust and breaches of duty. But as the district court noted in its ruling, Peter's petition did not allege a breach of fiduciary duties—it sought a disclosure of the RT instrument and an accounting of its assets. The district court properly limited the scope of Peter's discovery to the scope of the claims in his petition, and in doing so gave effect to the expressed intent of Norma's trusts.

23

Before leaving this issue, we observe that it would have been appropriate for the district court to conduct an in-camera inspection of the entire RT instrument rather than reviewing only Articles 10 through 12 before ruling on the GST trustee's summary judgment motion. Article 11.02(b) limits the trustee's duties to inform and report to the beneficiaries including the GST trustee "[e]xcept as otherwise provided." Arguably, the district court could not determine what information was otherwise provided in the RT instrument without reviewing the entire document. But Peter has never requested or argued for an in-camera inspection of the entire RT instrument in either district court or on appeal. We also have the problem that the RT trustee—the only party with access to the entire RT instrument—had been dismissed from the lawsuit before the parties conducted discovery on the claims in Peter's petition and the district court ruled on the GST trustee's summary judgment motion. The district court properly granted the RT trustee's motion to dismiss because Peter lacked standing individually to sue the RT trustee. And as we said before whether Peter could have properly asserted derivative standing to sue the RT trustee on behalf of the GST trustee and its beneficiaries is not an issue before us. We must limit our review of the district court's proceedings to the arguments that the parties have presented.

In sum, we find that the district court properly considered the provisions in Articles 10 through 12 of the RT instrument as that document was sufficiently authenticated and was admissible evidence. We also find that the district court properly interpreted those provisions and correctly applied them to the facts of this case without violating any terms of the KUTC or common-law trust principles. We also find that the district court did not improperly limit discovery and rule on the summary judgment motion before completion of discovery. Based on the arguments Peter presented in district court and on appeal, he has failed to show that the district court erred in granting summary judgment for the GST trustee on Peter's claims.

24

Peter claims the district court erred in granting summary judgment on the GST trustee's counterclaim alleging that Peter violated the forfeiture provisions of the GST instrument when he filed his lawsuit. Peter argues that his lawsuit was not a contest of the GST or the RT but merely sought information about the trusts. Peter contends the district court erred in finding that his petition for declaratory judgment violated the express terms of the forfeiture clause and in finding that he lacked probable cause to file his petition. The GST trustee asserts the district court correctly found that Peter violated the forfeiture provisions by trying to obtain information about the RT that Peter knew he was not entitled to receive under the terms of the GST instrument and the RT instrument.

We stated our summary judgment standard of review in the last section of this opinion. See *Buehne*, 314 Kan. at 510. An appellate court also exercises unlimited review over a district court's legal interpretation of a trust. *Hemphill*, 295 Kan. 1110, Syl. ¶ 2. Whether probable cause exists to contest a trust is a mixed question of fact and law. *In re Estate of Wells*, 26 Kan. App. 2d 282, 285, 983 P.2d 279 (1999) (contesting a will).

Kansas courts apply a two-part analysis to determine whether a no-contest clause should be enforced against a beneficiary. First, the court determines whether the beneficiary's actions violated the express terms of the no-contest clause. Second, the court determines whether the beneficiary had probable cause to take those actions. *Hamel v. Hamel*, 296 Kan. 1060, 1075-76, 299 P.3d 278 (2013). Probable cause is defined as "the existence, at the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful." *In re Estate of Campbell*, 19 Kan. App. 2d 795, 801, 876 P.2d 212 (1994). This court has observed that no-contest

provisions included in a trust should be strictly construed against forfeiture. *In re Trust of Hildebrandt*, 53 Kan. App. 2d 368, 374, 388 P.3d 918 (2017).

Article 8 of the GST instrument included forfeiture provisions, in relevant part:

"Notwithstanding any other provision of this instrument to the contrary, and to the maximum extent applicable state law permits, if following my death any beneficiary under this instrument files a complaint, joins as a plaintiff, or in any other manner seeks, directly or indirectly to take any one or more of the actions described in this article, then thereafter for all purposes the provisions of this instrument shall be construed and any property shall be disposed of as though that beneficiary had predeceased me. The actions covered by this article are as follows:

"(a) Contesting this instrument or any other trust created by me or my husband either during life or at death and whether by way of grant, exercise of power of appointment or otherwise, or any amendment to any of the foregoing[.]"

Article 10 of the RT instrument also included forfeiture provisions. But in granting summary judgment on the GST trustee's counterclaim, the district court clarified it was relying only on the forfeiture provisions of the GST instrument.

The district court granted summary judgment on the GST trustee's counterclaim from the bench, and like its rulings on other issues, the district court did not file a written memorandum opinion. In ruling on the motion, the district court tried to summarize the uncontroverted facts and found that Peter received a copy of the GST instrument; Peter sent a letter requesting a copy of the RT instrument as well as an accounting of its assets and his request was denied; Peter had a meeting to strategize about how to obtain the information about the RT that had been denied; and Peter's petition alleged that he was legally and equitably entitled to information about the RT because of his status as a qualified beneficiary of the GST. The district court then concluded:

26

"Based on all of those facts, which are not controverted and before this Court, this Court at this time can make a finding as a matter of law that when the petition was filed on October 23rd, 2020, stating that the GST Trust equitably and legally entitled it to receive the Revocable Trust, it was contesting the GST Trust. That action was sufficient to trigger the Article 8 forfeiture provisions."

The district court reasoned that Peter's claims of legal and equitable entitlement to receive and inspect the RT instrument and his attempt to receive a full accounting of the RT's assets triggered the GST instrument's Article 8 forfeiture provisions. At a later hearing, the district court supplemented its forfeiture ruling, finding that Peter's actions demonstrated a lack of probable cause to file his petition.

On appeal, the parties disagree about whether Peter's actions constituted a contest of the GST or RT sufficient to trigger the GST's forfeiture provisions. Peter argues that a "'contest' seeks to invalidate the instrument; seeking information is not a contest." Peter contends his filing of a lawsuit to try to obtain information about the RT did not attack or question the validity of either the GST or the RT, but sought a construction and application of the GST that would permit him to access information about the RT. In other words, he contends that his actions did not violate the forfeiture provisions of the GST because he merely sought an interpretation of the terms of the GST: "The whole point of the suit was to secure information so Peter could protect his inheritance under *that very instrument*. Asking for information about the upstream funding of the GST did not in any way challenge the validity of the GST." In response to Peter's categorization of his actions as seeking information, the GST trustee argues that the district court "properly recognized something more culpable—and prohibited—in the uncontroverted facts."

The GST instrument does not provide any definition or explanation of what the term "contesting this instrument" means. Black's Law Dictionary defines "contest" as "[t]o litigate or call into question; challenge." Black's Law Dictionary 400 (12th ed.

27

2024). To support his position that he did not contest either the GST or the RT, Peter cites *Meyer, Executor v. Benelli*, 197 Kan. 98, 101, 415 P.2d 415 (1966) (finding a contestant seeking an interpretation of a will under which several parties claimed title to property did not constitute a will contest because the contestant "was simply seeking an interpretation of the provisions of the will under which both parties claimed title") and comment c of Restatement (Second) of Property § 9.1 ("an action commenced solely for the purpose of obtaining information concerning a donative transfer does not violate a no-contest provision"). These authorities suggest that the filing of a lawsuit does not necessarily constitute a will contest when the party filing the lawsuit merely seeks a judicial interpretation and does not challenge the provisions of the instrument itself.

The district court's forfeiture ruling is premised on the implicit finding that Peter knew he was not entitled to receive the information he was seeking about the trusts at the time he filed his petition for declaratory judgment, so that the petition amounted to an action contesting the GST instrument. But evidence to support this finding is not clearly established in the summary judgment pleadings. Peter received a copy of the forfeiture provisions in Article 8 of the GST instrument with the letter from Hansen dated December 11, 2019. But the record is unclear when Peter first received a copy of the privacy provisions in the RT instrument. The GST trustee provided Peter with a copy of Articles 10 through 12 of the RT instrument, including Norma's expressed intention in Article 11 to keep most of the trust provisions private, during discovery. The record also shows that on November 21, 2019, Hansen mailed a letter to the beneficiaries of the RT enclosing a copy of Articles 10 through 12. This letter was sent to the GST trustee as a qualified beneficiary of the RT, but it was not mailed directly to Peter. It appears from exhibits attached to the summary judgment pleadings that at some point Peter received from his father a copy of the November 21, 2019, letter with the enclosed Articles 10 through 12. But the summary judgment pleadings do not make it clear *when* Peter received this letter and that he received it *before* he filed his petition.

28

Regardless of the documents Peter may have possessed when he filed his petition—and even if he may have had some knowledge about the RT privacy provisions—the legal action did not contest the GST or the RT but merely sought information about the trusts and a judicial interpretation of the trust instruments. The legal action did not seek to invalidate either trust instrument; nor did it seek to remove the trustee of either trust. As a qualified beneficiary of the GST, Peter had a right to seek information about the RT, to the extent it could be provided, since the RT was the funding source for the GST. Norma passed away about a year before Peter sought a legal remedy. Up to that point, the only information Peter had received about his grandmother's estate was a letter from an attorney that explained the GST was "currently unfunded" and the amount it would be funded in the future was "unknown." Based on the record provided in the summary judgment pleadings, we disagree with the district court's legal conclusion that Peter's petition triggered the forfeiture provisions of the GST. We need not reach the district court's finding that Peter lacked probable cause to file his petition.

Affirmed in part and reversed in part.